Leon SWANIGAN, Plaintiff-Respondent,

v.

STATE FARM INSURANCE COMPANY, a foreign corporation,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 79–235. Argued September 30, 1980.—
Decided November 25, 1980.*

(Affirming Court of Appeals opinion not submitted for
publication.)
(Also reported in 299 N.W.2d 234.)

For the appellant-petitioner there were briefs by *Jeffrey A. Schmeckpeper* and *Kasdorf, Dall, Lewis & Swietlik, S.C.*, of Milwaukee, and oral argument by *Jeffrey A. Schmeckpeper.*

For the respondent there was a brief by *Peter S. Balistreri* and *Burke & Schoetz* of Milwaukee, and oral

argument by *Peter S. Balistreri* of *Shapiro, Gorsky & Dubin, Ltd.*, of Milwaukee.

SHIRLEY S. ABRAHAMSON, J. The issue presented is whether an instrument which states that it is intended to release only the parties specifically named and which expressly reserves any other claim of whatever kind or nature against any other persons also releases as a matter of law the mother of a minor (who was released in the instrument) from liability imposed on her pursuant to sec. 343.15(2), Stats., as sponsor on the minor's application for a driver's license. The circuit court concluded that the mother was not released from liability. The court of appeals affirmed the judgment of the circuit court, and we affirm the decision of the court of appeals.

On July 4, 1977, the plaintiff, Leon Swanigan, was injured while riding in a vehicle owned by Dorothy A. Laurence, insured by American Family Insurance Company, and driven by Jimmy Zollicoffer, a minor under the age of eighteen. Brooksie Zollicoffer was the sponsor on her son Jimmy's application for a driver's license. The other vehicle in the collision was operated by Maria C. Busalacchi and insured by Allstate Insurance Company.

In December, 1977, American Family paid the plaintiff $15,000, the full amount for which it was liable under the policy. As consideration for this payment, plaintiff executed an instrument by which he released and discharged Dorothy A. Laurence, Jimmy Zollicoffer, and the American Family Insurance Company from all claims arising out of the accident, reserved his rights against other parties, agreed to indemnify the parties released and save them harmless from any claims for contribution and further agreed to satisfy any judgment which might be rendered in his favor against the parties released to the extent of the percentage that the

causal negligence of the parties bears to the causal negligence of all adjudged tortfeasors.

The instrument provides as follows:

## "RELEASE

"FOR THE SOLE CONSIDERATION OF Fifteen thousand and no/100 DOLLARS ($15,000), the receipt of which is hereby acknowledged, I/we hereby fully and forever release and discharge Dorothy A. Laurence and Jimmy L. Zollicoffer and the American Family Mutual Insurance Group of Madison, Wisconsin, their heirs, administrators, executors, successors and assigns from all claims, demands, damages, actions, rights of action of whatever kind or nature which I/we now have or may hereafter have arising out of, in consequence of or on account of all injuries to person, including any latent injuries and all developments and results therefrom, known and unknown injuries, whether developed or undeveloped, and anticipated and unanticipated consequences of all such injuries, and damages to property resulting to me/us in any way from an accident which occurred on or about the 4th day of July, 1977, at or near North 68th Street & West Ruby St., Milwaukee, Milwaukee County, Wisconsin. In accepting said sum I/we hereby release and discharge that fraction, portion or percentage of the total cause of action of claim for damages I/we now have or may hereafter possess against all parties responsible for my/our damages which shall by trial or other disposition, be determined to be the sum of the fractions, portions or percentages of causal negligence for which the parties herein released are found to be liable to me/us as a consequence of the above accident.

I/We hereby accept said sum as a compromise and settlement of all claims on account of the dispute between the parties hereto as to whether the above named parties are liable to me/us or not, and also as to the nature, extent and permanency of the injuries sustained by me/us.

I/We agree that in making this release, I/we am/are relying on my/our own judgment, belief and knowledge as to all phases of my/our claims and that I/we am/are

not relying on representations or statements made by any of the persons hereby released or anyone representing them or physicians or surgeons employed by them.

I/We agree that the payment of the above sum is not to be construed as an admission of any liability whatsoever by or on behalf of the above named parties, by whom liability is expressly denied.

I/We further agree that any claim of whatever kind or nature the above named parties might have or hereafter have growing out of the above accident, is hereby expressly reserved to them.

This release is intended to release only the parties specifically named. The undersigned expressly reserve the balance of the whole cause of action or any other claim of whatever kind or nature not released hereby which I/we may have or hereafter have against any other person or persons arising out of the above accident.

As a further consideration, we the undersigned, agree to indemnify said parties released and save them harmless from any claims for contribution made by others so adjudged jointly liable with said parties released, and the undersigned agrees to satisfy any judgment which may be rendered in favor of the undersigned, satisfying such fraction, portion or percentage of the judgment as the causal negligence of the parties released is adjudged to be of all causal negligence of all adjudged tort-feasors. In the event the undersigned fails to immediately satisfy any such judgment to the extent of the fraction, portion or percentage of the negligence as found against the parties released, the undersigned hereby consents and agrees that upon filing a copy of this agreement, without further notice, an order may be entered by the court in which said judgment is entered directing the Clerk thereof to satisfy said judgment to the extent of such fraction, portion or percentage of the negligence as found against the parties released and discharged under this release.

[SIGNED Leon Swanigan]"

After signing the instrument, plaintiff learned that Brooksie Zollicoffer, Jimmy's mother, was insured at

the time of the accident under a policy of automobile insurance issued by State Farm Insurance Company. The plaintiff then sought recovery from State Farm on the grounds that Brooksie Zollicoffer, as sponsor on Jimmy's application for a driver's license pursuant to sec. 343.15 (1), Stats., was jointly and severally liable with Jimmy to an injured party for any damages caused by Jimmy's negligent operation of a motor vehicle pursuant to sec. 343.15 (2), Stats. Sec. 343.15 (1) and (2), Stats., provide as follows:

"343.15 **Application of persons under 18; liability of sponsors; release from liability; notification of juvenile violation.** (1) The application of any person under 18 years of age for a license shall be signed and verified before a person duly authorized to administer oaths, by either of the applicant's parents; or if neither parent has custody, then by the person or guardian having such custody or by the applicant's employer, subject to the exception stated in· sub. (4). If the adult sponsor is the applicant's parent, the application may be signed and verified before a traffic officer or before a duly authorized agent of the department in lieu of being signed and verified before a person duly authorized to administer oaths.

" (2) Any negligence or wilful misconduct of a person under the age of 18 years when operating a motor vehicle upon the highways is imputed to the parents where both have custody and either parent signed as sponsor, otherwise, it is imputed to the adult sponsor who signed the application for such person's license. The parents or adult sponsor is jointly and severally liable with such operator for any damages caused by such negligent and wilful misconduct."

State Farm responded by saying that, as a matter of law, the instrument executed by plaintiff operated to release Brooksie Zollicoffer and her insurer, State Farm, from any liability and refused to pay any sum to the plaintiff. Plaintiff then brought a declaratory judgment action against State Farm to determine the effect of

the release. The complaint states that the parties stipulated that State Farm would pay plaintiff $10,000 if plaintiff were successful in the action.[1]

State Farm moved for summary judgment. The circuit court granted summary judgment in favor of the plaintiff for the amount stipulated after concluding that sec. 343.15(2), Stats., imputes the negligence of a minor driver to the adult sponsor and makes the minor driver and the adult sponsor jointly and severally liable for any damages caused by the minor's negligent operation of a motor vehicle; that the release is to be treated as a contract; and that plaintiff, by the terms of the contract, reserved his rights to sue any and all parties not named in the document. The court of appeals affirmed the circuit court, and we affirm the decision of the court of appeals.

Both the plaintiff and State Farm begin their arguments by characterizing the relationship of sponsor and minor under sec. 343.15, Stats., as equivalent to a relationship recognized in the common law. The plaintiff describes the relationship as that existing between joint tort-feasors. Defendant describes the relationship as synonymous to the relationship of master and servant. The parties then look to the common law applicable to joint tort-feasors and master and servant to resolve the question of the legal effect of a release.

Plaintiff contends that the relationship of joint tort-feasor is created between Jimmy Zollicoffer and Brooksie Zollicoffer by sec. 343.15(2), Stats., which makes the sponsor jointly and severally liable with the minor tort-feasor for any damage caused by the negligence or

---

[1] State Farm's answer does not deny the existence of the stipulation but does deny that Jimmy was negligent. These paragraphs of the answer appear to be inconsistent. The trial court and the parties have treated the stipulation set forth in the complaint as if it is in full force and effect.

wilful misconduct of the minor driver. Relying on the common law, plaintiff then asserts that this court has since 1880 held that a release of one joint tort-feasor with reservation of rights against the other joint tort-feasor is not a true release which operates to discharge both joint tort-feasors from liability, but is in the nature of a covenant not to sue. *State Farm Mut. Auto. Ins. v. Continental Casualty Co.*, 264 Wis. 493, 497–498, 59 N.W.2d 425 (1953). Plaintiff then concludes that the agreement in the case at bar did not discharge the sponsor or State Farm from liability.

State Farm rejects this view, contending that although Jimmy and Brooksie Zollicoffer are jointly and severally liable to the plaintiff, they are not joint tort-feasors. State Farm maintains that the status of joint tort-feasor arises between persons not from the nature of the liability, *i.e.*, that defendants are jointly and severally liable, but from the nature and consequences of their conduct and that to be joint tort-feasors the parties must act in concert in the execution of a common tortious purpose or commit independent torts which concur in causing an indivisible injury. *Cf. Bolick v. Gallagher*, 268 Wis. 421, 427, 67 N.W.2d 860 (1955) ; *Brown v. Hammermill Paper Co.*, 88 Wis.2d 224, 232, 276 N.W. 2d 709 (1979). State Farm asserts that the conduct of the adult sponsor in signing the driver's license application does not fit within this general description of the conduct of a joint tort-feasor and that the factual allegations of the complaint are also insufficient to establish that the two are joint tort-feasors. There is no allegation that Brooksie Zollicoffer was in any way negligent or in any way involved with Jimmy Zollicoffer's negligent operation of the automobile.

We do not decide this case by resolving the disagreement between the parties relating to whether the sponsor and minor are joint tort-feasors. The term joint

tort-feasor is "surrounded by no little uncertainty and confusion." Prosser, *Law of Torts* 291 (4th ed. 1977). The term has a different meaning in different contexts. *See* 1 Harper & James, *The Law of Torts* sec. 10.1 (1956) ; Leflar, *Contribution and Indemnity Between Tort-Feasors,* 81 U. of Pa. L. Rev. 130, 131, n. 9 (1932) ; 4 Restatement (Second) of *Torts* secs. 875–886B (1977). We do not think the resolution of this case should turn on our attempting to fit the statutory relationship between sponsor and minor into the not too-well defined concept of joint tort-feasor and on our attempting to apply the troublesome rules relating to releases of joint tort-feasors to the statutory relationship. Resolving the case in this fashion would not contribute to an understanding of sec. 343.15, nor would it bring clarity to the law of releases and joint tort-feasors. We therefore conclude that the cases cited by plaintiff relating to agreements releasing fewer than all joint tort-feasors do not control in this case.

According to State Farm, sec. 343.15, Stats., creates a relationship between the adult sponsor and the minor with respect to liability for the minor's negligence or wilful misconduct in the operation of a motor vehicle synonymous with that which exists between a master and servant with respect to the master's liability for the servant's negligence. State Farm contends that the minor driver, like the servant, is the active tort-feasor and that the adult sponsor, like the master, is without personal fault and is vicariously liable to the victim. State Farm argues that the majority rule is that release of the servant releases the master because release of the servant removes the foundation upon which to impute negligence to the master,[2] that the majority rule

[2] Even if we were to accept State Farm's contention that the relationship between the sponsor and the minor driver is synonymous with the relationship of principal and agent, which we do not, we

should be adopted in Wisconsin, and that the release of the minor in the instant case released the sponsor and State Farm.

State Farm contends in support of its argument that in *Dombeck v. Chicago, M., St. P. & P. R. Co.,* 24 Wis.2d 420, 129 N.W.2d 185 (1964), this court viewed the law governing the master-servant relationship as applicable to sec. 343.15, Stats. *Dombeck* involved an action by the sponsoring parent against the minor child whose negligent operation of an automobile resulted in the death and injury to the parent's other minor children. The court held that the imputation of the negligence of the minor child to the sponsoring parent under sec. 343.15

need not accept State Farm's conclusion that a release of the agent which reserves rights against the principal operates as a matter of law to release the principal. Jurisdictions have divided on this question. For the division of authority as to whether release of the active tort-feasor bars recovery from one secondarily or vicariously liable notwithstanding a provision reserving rights against the one vicariously liable, *see, e.g., Finney v. Farmers Ins. Co.,* 21 Wash. App. 601, 586 P.2d 519 (1978); *Alaska Airlines Inc. v. Sweat,* 568 P.2d 916, 928 (Alaska 1977); *Craven v. Lawson,* 534 S.W.2d 653 (Tenn. 1976); *Williams v. Marionneaux,* 240 La. 713, 124 So.2d 919 (1960); *Bacon v. United States,* 321 F.2d 880 (8th Cir. 1963); Recent Developments, *Torts—Vicarious Liability— Covenant Not to Sue Servant or Agent As Affecting Liability of Master or Principal,* 44 Tenn. L. Rev. 188 (1976); Annot., *Release of or Covenant Not to Sue One Primarily Liable for Tort, But Expressly Reserving Rights Against One Secondarily Liable, as Bar to Recovery Against Latter,* 20 ALR2d 1038 (1951) and Later Case Service; Annot., *Release of (Or Covenant Not to Sue) Master or Principal As Affecting Liability of Servant or Agent for Tort or Vice Versa,* 92 ALR2d 533 (1963); 4 Corbin, *Contracts* secs. 932, 933 (1971 Pocket Part).

*See also* Stearns, *Law of Suretyship* sec. 6.42, p. 174 (6th ed. 1951) and 10 Williston, *Contracts* sec. 1230, pp. 738–9 (3d ed. Jaeger 1967), for a discussion of an analogous rule that a surety on a debt is not discharged where the creditor releases the principal but expressly reserves his rights against the surety.

(2), Stats., did not bar an action by the parents against the negligent minor child, stating:

"[A] majority of this court considers it would work an unreasonable and absurd result if the statute were to be construed to abrogate, as between sponsoring parent, guardian, or employer and sponsored child, the rule that negligence of an agent or joint venturer is not to be imputed to his principal or other joint venturer in an action between the parties. . . ." 24 Wis.2d at 438.[3]

*Dombeck* does not say that the relationship between the sponsor and minor under sec. 343.15(2), Stats., is synonymous to the relationship of master and servant and that law governing the master-servant relationship is applicable to the statutorily created relationship. We interpret the *Dombeck* opinion as saying that in an action by a sponsoring parent against the minor driver the legislative purpose expressed in sec. 343.15(2) is not accomplished by reading sec. 343.15(2) as requiring that the negligence of the minor be imputed to the sponsor in an action between the parties. The legislative purpose is given effect by applying a rule developed in master-servant law that the negligence of the active tort-feasor (servant) is not imputed to the party without personal fault (the master) in an action between the two. Rules developed in other fields of law may be applicable to a case arising under sec. 343.15(2), Stats., where these rules comport with the purpose of the statute.

State Farm also relies on *Geib v. Slater,* 320 Mich. 316, 31 N.W.2d 65 (1948), in which the Michigan court viewed an automobile owner's statutory liability for the driver's negligence as resting on the law of agency. In

[3] Although the court in *Dombeck* used the terms principal and agent, it is clear it was referring to the master-servant relationship. *Arsand v. City of Franklin,* 83 Wis.2d 40, 264 N.W.2d 579 (1978).

*Geib* the owner of an automobile left it at a garage for repair. While driving the car, an employee of the garage negligently struck and killed a pedestrian. The executor of the pedestrian's estate settled with the garage owner and the employee and executed a release without specifically reserving rights against others. The executor then commenced an action against the owner of the car under the Michigan statute. The owner defended on the ground that the release of the driver also released the owner. In opposition to the defense of release the executor relied on a Michigan statute providing that a release of one joint tort-feasor does not impair the injured party's rights against the other joint tort-feasor. The court rejected this argument and decided instead that the doctrine of agency applied:

". . . 'The liability of the owner of a motor vehicle for damages caused by the negligent operation thereof by another person, rests upon the doctrine of agency, express or implied. The liability is based upon the doctrine of respondeat superior.' " *Geib v. Slater, supra,* 31 N.W.2d at 67.

The Michigan Supreme Court then concluded that the owner was released because by the great weight of authority a valid release of either the master or servant from liability for tort operates to release the other.

State Farm's reliance on *Geib* is misplaced. In more recent cases, the Michigan Supreme Court has retreated implicitly and explicitly from the reasoning in *Geib*. In *Boucher v. Thomsen*, 328 Mich. 312, 43 N.W.2d 866 (1950), the Michigan Supreme Court was faced with a fact situation similar to the one in *Geib*. In *Boucher*, however, the instrument was distinguishable from the one in *Geib* because it stated that the executor agreed not to sue the garage owner and employee and further stated that the executor's rights against the owner of the automobile were reserved. The trial court held that

the agreement released the automobile owner from liability. The Michigan Supreme Court reversed the trial court treating the instrument as a covenant not to sue, rather than as a release, and holding that a covenant not to sue does not bar suit against those persons not specifically released from liability. Resolving the question by treating the instrument as a covenant not to sue is a technique frequently used by courts, including our court, in cases involving the question of whether an instrument releases a person from liability.

In 1957, in *Peyton v. Delnay*, 348 Mich. 238, 248, 249, 83 N.W.2d 204 (1957), the Michigan Supreme Court expressly retreated from its position in *Geib* that the liability imposed by statute on the owner of the motor vehicle for the negligence of a driver operating the car with the owner's consent rests on the doctrine of *respondeat superior*. In *Peyton* the court unanimously disclaimed this analogy as follows:

"Appellants contend further that the owner here is not liable for wilful and wanton misconduct of the operator because at common law under the *respondeat superior* doctrine a wanton violation of the law was held to place a servant outside the scope of his master's service.

"The statute we interpret here is not a derivative of the *respondeat superior* doctrine. It is a measure adopted by the legislature to promote public safety by holding automobile owners accountable for certain negligent acts of the persons to whom they entrust their automobiles. *Johnson v. Sergeant*, 168 Mich 444 (2 NCCA 334); *Stapleton v. Independent Brewing Co.*, 198 Mich 170 (LRA 1918A, 916). It would be a strange construction of such a statute to hold an owner for the ordinary negligence of the person whom he allowed to drive his car and free him from liability if his chosen driver was found guilty of gross negligence or wilful and wanton misconduct."

In another 1957 decision, *Moore v. Palmer*, 350 Mich. 363 N.W.2d 585 (1957), the Michigan Supreme Court in a plurality opinion expressly overruled the *respondeat superior* language used in *Geib* and concluded that the Michigan statute is founded upon the police power of the state.[4]

[4] The plurality opinion discussed *Geib* as follows:

"And in *Geib v. Slater*, 320 Mich 316, and *Riser v. Riser*, 240 Mich 402, 404 (27 NCCA 518), this Court in discussing this statute quoted language purporting to originate in an Iowa case *(Maine v. James Maine & Sons Co.*, 198 Iowa 1278 [201 NW 20, 37 ALR 161]:

" ' "The liability of the owner of a motor vehicle for damages caused by the negligent operation thereof by another person, rests upon the doctrine of agency, express or implied.

" ' "The liability is based upon the doctrine of *respondeat superior.*" ' *Geib v. Slater, supra,* 320.

"We have read this Iowa case with interest and fail to find therein the same words in the same context. It is true that that case does speak of the Iowa owner liability statute as *an extension* of the *respondeat superior* doctrine. But it goes on to state (p 1282):

" 'The statutory liability depends upon two things: the consent of the owner to the use of the car by the driver, and the negligence of the driver.'

"In upholding these statutes, most of the States, with Michigan well in the lead, have planted the constitutionality of the enactment squarely upon the police power of the State and the public's need for protection from automobiles in the hands of reckless drivers.

". . .

"We now reiterate. The Michigan owner liability act, CLS 1954, sec. 257.401 (Stat Ann 1952 Rev sec. 9.2101), is an enactment founded upon the police power of the State. Its obvious purpose is to make owners of automobiles liable for the negligent acts of those to whom they entrust their vehicles. Liability under the statute is not limited by the common-law tests applicable to the master-servant relationship. The fact that a common-law action under the master-servant doctrine preceded the statute (and still exists) does not create any exception from the terms of the statute in favor of employers as a class.

The Michigan cases interpreting the Michigan owner liability statute do not support State Farm's contention that the statutory relationship under sec. 343.15(2), Stats., is synonymous with or an extension of the master-servant relationship.

We conclude that sec. 343.15(2), Stats., does not rest upon the doctrine of agency. Although the liability of the sponsor for the negligence of the minor driver may have some similarity with that of the master for the negligent driving of a servant, the relationship between sponsor and minor should not be viewed as one of master and servant.

Sec. 343.15(2), Stats., was enacted because the legislature was concerned with the hazards of negligently operated motor vehicles and with the desirability of imposing liability on a dependable adult who could pay for damages caused by a negligent minor driver. We recognized this legislative purpose in *Employers Mut. Fire Ins. Co. v. Haucke*, 267 Wis. 72, 64 N.W.2d 426 (1954), a case in which a minor stole a car and negligently damaged it. The sponsor argued that he should not be

"The statute carries within it its own test as to owner liability: Whether 'said motor vehicle is being driven with his or her express or implied consent or knowledge.' CLS 1954, sec. 257.401 (Stat Ann 1952 Rev sec. 9.2101). These were the very words which the trial judge employed in our present cases and which are the subject of appellants' complaint. We hold that they were correctly employed.

"Further to attempt some clarification of the long and confusing history we have recited, we hold that the language referred to in *Geib v. Slater, supra,* and *Riser v. Riser, supra,* holding the Michigan owner liability act to be based upon the doctrine of *respondeat superior* is expressly overruled. . . ." *Moore v. Palmer, supra,* 350 Mich. 389–394.

The view adopted by the plurality in *Moore* was later adopted by the Michigan Supreme Court. *See Kiefer v. Gosso,* 353 Mich. 19, 90 N.W.2d 844 (1958); *Roberts v. Posey,* 386 Mich. 656, 194 N.W.2d 310, 312 (1972).

liable to the owner of a stolen car for damage to the car resulting from the criminal conduct of the minor engaged in without the knowledge or consent of the sponsor. This court held that the sponsor was liable under the statute for the damage caused by the minor's negligent operation of a stolen car. We concluded that the legislative purpose of sec. 343.15(2) is plain—to protect the public from damage caused by the negligent operation of vehicles by youthful drivers. To effectuate this purpose the sponsor's statutory liability does not depend on the consent or knowledge of the sponsor with respect to the possession or operation of the car by the minor. Sec. 343.15(2) is designed to protect persons damaged by the negligence of a minor driver. The statutory rule of liability is *sui generis;* it is not restricted by the common-law rules applicable to master and servant.[5]

The legislature created its own rules for liability of the sponsor in sec. 343.15(2), Stats.; the legislature did not enact the common-law rules of *respondeat superior* in sec. 343.15(2), Stats. Campbell, *Wisconsin Law Governing Automobile Accidents—Part II,* 1962 Wis. L. Rev. 557, 590; Seavey, *Law of Agency* sec. 88, pp. 154–155 (1964) ; 2 Harper & James, *The Law of Torts* sec. 26.16 (1956). We therefore conclude that the relationship of the sponsor to the minor is not synonymous with the master-servant relationship and that the common-law rule relating to the legal effect of a release of a servant on the liability of the master is not applicable to the

---

[5] For cases interpreting state statutes making the adult sponsor liable, *see* Annot., *Construction and Effect of Statutes Which Make Parent, Custodian, or Other Person Signing Minor's Application For Vehicle Operator's License Liable For Licensee's Negligence or Wilful Misconduct,* 26 ALR2d 1320 (1952).

question of the legal effect of a release of a minor driver on the liability of the sponsor under the statute.

Before we can address the question of the legal effect of the release on any cause of action which plaintiff may have against State Farm we must first determine whether a factual question exists, namely the intended scope of the instrument.[6] State Farm and plaintiff agree that

---

[6] In *Brown v. Hammermill Paper Co.*, 88 Wis.2d 224, 233–37, 276 N.W.2d 709 (1979), this court discussed the factual question as follows:

"A release is a unilateral contract and the intention of the parties as to its scope and effect is relevant. In construing a release the court must read the instrument in its entirety. . . .

"The issue of the intended scope of a release is not determined by the form of the instrument alone or by the mere use of the term 'release' in the documents in question. It has been said that the ultimate test of the intended scope of such documents is whether the obligee has received 'full satisfaction, or that which the law must consider as such.' . . . The difference between the amount of damages actually sustained and the sum paid by the obligor under the terms of the settlement agreement is relevant to a determination of the factual question whether the amount received from the tort-feasor was intended to be and was in fact received in full satisfaction of the wrong. Other facts which have been held to bear on the matter of the intent of the parties concerning the scope of a release have been that the release specifically named or referred to no person other than the original obligor and that the consideration was accepted as a compromise and final settlement of all claims between the parties rather than as full compensation for all injuries. . . .

". . .

"There are material differences in the factual allegations of the parties with respect to the nature and scope of the settlement agreements. The conflict cannot be resolved merely by examining the face of the instruments. The circumstances surrounding the drawing up of the releases, the fact that the agreements arose within the context of a lawsuit involving several named defendants —not including Hammermill, the difference between the amount received in settlement of the prior claims and the total damages sustained, Brown's statements in the affidavit and deposition regarding the intended limited scope of the releases, the fact that

no question exists as to plaintiff's intent and that the intent is expressly set forth in the instrument. State Farm and plaintiff agree that the plaintiff intended to release only the parties specifically named; that the plaintiff intended to reserve the balance of the whole cause of action or any other claim of whatever kind or nature against any other person or persons arising out of the accident; and that the plaintiff accepted the $15,-000 (the policy limits) as a partial satisfaction of the damages and of the cause of action and not as an accord and satisfaction of the whole cause of action or in full payment of plaintiff's damages actually sustained in the accident. State Farm concedes that if the expressed intent of the parties to the instrument is determinative of the question of whether plaintiff has reserved a cause of action against the sponsor, the plaintiff must prevail.

the claims involved in the prior action which gave rise to the releases concerned negligent conduct on the part of the prior defendants and their agents and employees, whereas the present suit is grounded on products liability claims—all these are material matters of fact which bear on the ultimate factual issue of the intention of the parties as to the scope and effect of the instruments.

"Releases of joint tortfeasors may and do take many forms having the characteristics and legal effect of a covenant not to sue, or a partial satisfaction of the damages and of the cause of action, or an accord and satisfaction of the whole cause of action, or a discharge from liability, or various combinations thereof. *Pierringer v. Hoger, supra,* 21 Wis.2d at 185. Before a court can address the legal question of the effect of the releases on any cause of action which the plaintiffs may have against Hammermill, the factual question of the intended scope of the instruments must be resolved. . . ."

*See also Peiffer v. Allstate Ins. Co.,* 51 Wis.2d 329, 187 N.W.2d 182 (1971); *Pokorny v. Stastny,* 51 Wis.2d 14, 186 N.W.2d 284 (1971); *Plummer v. Leonhard,* 44 Wis.2d 686, 172 N.W.2d 1 (1969); *Rensink v. Wallenfang,* 8 Wis.2d 206, 99 N.W.2d 196 (1959); *Nelson v. Boos,* 7 Wis.2d 393, 96 N.W.2d 813 (1959).

State Farm urges, however, that regardless of the reservation language in the instrument and regardless of the plaintiff's intent, the legal effect of the release instrument is that plaintiff has surrendered his cause of action against the sponsor. In order to test the soundness of State Farm's position, let us assume the following facts: the minor is released upon payment to the injured party of $15,000. The injured party, having reserved his rights against the sponsor, sues the sponsor; the minor is found 100 percent causally negligent; and the sponsor pays the injured party $40,000. The sponsor then seeks to recover from the minor all or part of the damages she paid.

Although sec. 343.15, Stats., makes the sponsor and minor jointly and severally liable, it does not spell out the sponsor's right to reimbursement, if any, from the minor. This court has not been faced with this question.

There are two doctrines generally applicable to the distribution of the loss among persons liable for the same harm—contribution and indemnity. Although the doctrines are distinct, the two do tend to merge. Contribution distributes the loss by requiring each person to pay his proportionate share of the damages on a comparative fault basis. *Pachowitz v. Milwaukee & Suburban Transport Corp.*, 56 Wis.2d 383, 202 N.W.2d 268 (1972). Indemnification shifts the entire loss from one person who has been compelled to pay it to another who on the basis of equitable principles should bear the loss. *Kjellsen v. Stonecrest, Inc.*, 47 Wis.2d 8, 12, 176 N.W.2d 321 (1970); *Jacobs v. General Accident, Fire & Life Assurance Corp., Ltd.*, 14 Wis.2d 1, 109 N.W.2d 462 (1961); Restatement (Second) of *Torts* sec. 886A, 886B (1977); Restatement of *Restitution* sec. 96 (1937); Prosser, *Law of Torts* secs. 50, 51 (1977); 1 Harper & James, *The Law of Torts* Ch. X (1956).

If the doctrine of contribution is applicable to the sponsor's claim against the minor, under State Farm's

reasoning the sponsor is liable for the portion of the damages attributable to the sponsor's negligence and the minor is liable for the portion of damages attributable to his negligence. State Farm would argue that, except for that negligence of the minor which is imputed to the sponsor under the statute for purposes of a suit by the injured party against the sponsor, the sponsor's negligence or fault is by definition zero. State Farm would further argue that there should be no imputation of negligence to the sponsor in a suit by the sponsor against the minor for contribution. *Cf. Dombeck v. Chicago, M., St. P. & P. R. Co.,* 24 Wis.2d 420, 129 N.W.2d 185 (1964). If the rules of contribution urged by State Farm are applied, the sponsor apparently should be able to recover the full $40,000 from the minor under the doctrine of contribution.

Because the minor has made a payment to the sponsor, the minor will, in turn, seek reimbursement from the injured party under the terms of the release whereby the injured party agrees to save the minor "harmless from any claims for contribution made by others so adjudged jointly liable with said parties released . . . ." If the injured party must reimburse the minor the full $40,000 which the injured party received from the sponsor, as State Farm contends, then the injured party, the minor and the sponsor are in the same position as they were before the injured party sued the sponsor.

State Farm further contends that this chain reaction of minor being released by injured party, injured party suing sponsor, sponsor suing minor for contribution, and minor suing injured party under the release, contravenes the language and purpose of the release instrument.

The release in the case at bar is a standard *Pierringer*-type release, *Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963), applicable to cases when there is contribution between persons "jointly liable." Under the

terms of the *Pierringer* release the plaintiff is limited in recovery from a nonsettling tort-feasor to the unsatisfied percentage of the damages—the percentage attributable to the nonsettling tort-feasor. When State Farm applies this rule, it concludes that whatever the percentage of negligence attributable to the minor, the same percentage of negligence is attributable to the sponsor under the statute, and that it would then appear that the entire percentage of negligence for which the sponsor is liable has been released by the *Pierringer*-type release given the minor.[7] Furthermore, the *Pierringer*-type release has been interpreted by this court as releasing the settling tort-feasor from any future liability, including contribution, deriving from the automobile accident. *Peiffer v. Allstate Ins. Co.*, 51 Wis.2d 329, 334–335, 187 N.W.2d 182 (1971). State Farm thus argues that if this court allows the injured party to recover from the sponsor and allows the sponsor to obtain contribution from the minor, we are negating the *Pierringer*-type release because the liability of the settling tort-feasor, contrary to the terms of the release and the intent of the parties, has not been terminated.

Having reviewed State Farm's position under the doctrine of contribution, we turn now to examine State Farm's position applying the doctrine of indemnification in the example we set forth previously. State Farm argues that because the sponsor is responsible to the injured party solely by imputation of law, the doctrine of indemnification, rather than the doctrine of contribution, applies to the sponsor's claim against the minor for reimbursement of loss. Restatement of *Restitution* sec. 96

---

[7] State Farm also argued, as we discussed previously, that release of the minor, the negligent tort-feasor primarily liable to the victim, like release of the servant, removes the foundation upon which to impute negligence to the sponsor whose liability is derivative.

and Comment (1937) ; Restatement (Second) of *Torts* secs. 886A and 886B (1977) ; Prosser, *Law of Torts* sec. 51, p. 311 (4th ed. 1971) ; Annot., *Right of Motor Vehicle Owner Liable to Injured Third Person Because of the Negligence of One Permitted to Drive, to Indemnity From the Latter or the Latter's Employer to Whom the Vehicle was Bailed,* 43 ALR2d 879 (1955). Applying the doctrine of indemnification, State Farm assumes that the sponsor would be entitled to recover 100 percent of the sponsor's loss ($40,000 under our example) from the minor. The minor would then seek full reimbursement from the injured party under the release (which, however, speaks in terms of saving harmless from claims for contribution) and would assert that he is entitled to recover from the injured party the $40,000 which the sponsor paid the injured party.

Under State Farm's theory of contribution or indemnification, the end result of allowing the injured party to sue the sponsor is that the injured party is left in the same position as before he sued the sponsor—the injured party has recovered a total of $15,000, the amount he initially received from the settlement with the minor. The financial positions of the sponsor, the minor and the injured party are unchanged, except for payment of any costs of litigation.

To summarize, State Farm argues that as a result of the application of the doctrine of contribution or indemnification, a holding that the release does not bar the plaintiff from suing the sponsor results in multiple litigation and circuity of action. State Farm contends that the money paid by the sponsor to the injured party will pass in a circle and ultimately be returned to the sponsor: The sponsor pays the injured party, the sponsor recovers the amount paid from the minor; the minor,

completing the circle, will then recover from the injured party pursuant to the release instrument which could be interpreted as requiring the injured party to hold the minor harmless from any liability of the minor to the sponsor. Thus State Farm concludes that as a matter of law the release should be interpreted as releasing the sponsor from liability to the plaintiff.

Even if State Farm's analysis of the applicability of the rules of contribution and indemnification to sec. 343.-15(2), Stats., and to the release in issue are correct, and we do not decide that it is,[8] State Farm conceded in oral argument that its analysis of contribution, indemnification, multiple litigation and circuity of action may not be applicable to the case at bar. In this case State Farm would pay the loss incurred by the sponsor when she is sued by the plaintiff. State Farm is subrogated to the claims which the sponsor may have against any person by whose negligence the injury was caused. Nevertheless, State Farm recognizes that even if the sponsor has a right of contribution or indemnification against the minor, State Farm may not be able to recover by way of subrogation from the minor because the minor apparently is an insured under the State Farm policy. *Miller v. Kujak,* 4 Wis.2d 80, 86, 90 N.W.2d 137 (1958); *Hallmark Ins. Co. v. Crary Enterprises,* 72 Wis.2d 472, 474, 476, 241 N.W.2d 171 (1976); *United States v. Julian,* 450 F.2d 575, 585 (10th Cir. 1971); *Builders & Mfrs.*

---

[8] We do not reach the questions of whether the sponsor or her insurer may have a cause of action against the minor for any sums paid to the plaintiff pursuant to the liability imposed under sec. 343.15(2), Stats., or whether the minor has a cause of action against the plaintiff under the hold harmless language of the release. These issues are not presented in this case. Neither the sponsor nor State Farm is seeking indemnification or contribution from the minor in the case at bar. The minor is not seeking indemnification from the plaintiff under the release in the case at bar.

*Mut. Cas. Co. v. Preferred Auto. Ins. Co.*, 118 F.2d 118 (6th Cir. 1941). *Cf.* Annot., *Subrogation of Employer's Liability Insurer to Employer's Right of Indemnity Against Negligent Employee*, 53 ALR3d 631, 647 (1973); 2 Harper & James, *The Law of Torts* sec. 13.4 (1956).

We are not persuaded to adopt State Farm's position. We hold that the release in the instant case does not operate as a release of the sponsor. We have reached this conclusion because we have determined that of the alternatives available, this holding best comports with the legislative intent and purpose of sec. 343.15(2), Stats., and with the intent of the injured party in executing the release, and this holding fosters voluntary settlement of claims, allows the released party to end his involvement with the matter, and does not necessarily mean circuity of action and multiple litigation.

Our holding that the sponsor is not released as a matter of law in the instant case comports with the legislative intent and purpose in enacting sec. 343.15, Stats. Recognizing that a minor's financial resources will often be insufficient to satisfy fully a claim arising from the minor's negligence, the legislature has, in sec. 343.15, Stats., provided the injured person with a potential source of payment for damages in addition to the minor or persons liable under the common law. The purpose of the statute to help give financial protection to the injured party is furthered if the injured party's release of the minor is not viewed as a release of the sponsor. In the instant case plaintiff settled with American Family for the maximum amount plaintiff could recover under the policy. To obtain this recovery quickly and to avoid loss of time and the costs of litigation, the plaintiff had to release the minor. Allowing the injured party to collect a portion of his damages from the minor by settlement and release and then to proceed against the

sponsor to collect the remainder promotes settlement and gives full effect to the purpose of the statute, which is to provide the injured party with an additional party from whom payment is possible. A contrary result would preclude settlement and engender delay.

Our holding that the sponsor is not released as a matter of law in the instant case gives effect to the intent of the injured party in executing the release. This court has favored following what it views as the clear trend of the law that the only desirable rule of law as to the effect of a release "would seem to be that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it." Prosser, *Law of Torts* sec. 49 at 304 (4th ed. 1977), quoted with approval in *Brown v. Hammermill Paper Co., supra,* 88 Wis.2d at 237. *See also* sec. 885, Restatement (Second) of *Torts* (1964). Giving effect to the intent of the parties to the release helps prevent the parties from being misled and fosters equitable termination of litigation and settlement of disputes.

Although our holding raises the possibility of circuity of action and multiple litigation depending on the applicability of indemnification or contribution, State Farm concedes that circuity of action and multiple litigation will not necessarily arise in every instance where a minor was released. Indeed the case at bar may be an example where there will be no circuity of action or multiple litigation.

The approach we have taken in this case, namely holding that the reservation of rights in the instant release is to be given effect, was followed by the New York Court of Appeals in *Plath v. Justus,* 28 N.Y.2d 16, 268 N.E.2d 117 (1971).[9] In *Plath* the administrator of dece-

---

[9] For a discussion of *Plath, see* Case Note, *Torts—Damages— Liability of Automobile Owner When Decedent's Spouse Covenants*

dent's estate settled with the negligent driver of the car that caused decedent's death and executed a release to the driver reserving any and all rights against any other persons. The administrator then commenced action against the owner of the car under a New York statute making the owner of a motor vehicle liable for the negligent operation of his car by another with his consent. The court of appeals explained the character of the derivative liability as follows:

"The liability of an owner, such as defendant, does not rest on any claim that he was himself guilty of negligence resulting in damages sustained by the plaintiff but arises solely by virtue of the statute. In other words, the driver's liability is grounded in common law, and the owner's liability, by statutory enactment." *Plath, supra,* 268 N.E. 2d at 119.

The New York court concluded that the driver and owner of the car were not joint tort-feasors and that the release with an express reservation of rights against others did not release the owner of his derivative liability under the statute:

"Where a release has been given but the releasor reserves the right to proceed against other wrongdoers, we believe effect should be given to the intention of the parties as expressed by these reservations and allow the suit against any defendant not a party to the release." *Plath, supra,* 268 N.E.2d at 120.

State Farm attempts to distinguish *Plath* by arguing that the New York law did not state that the driver's negligence is imputed to the owner; the New York law merely stated that the owner is liable for injury resulting from negligent operation of his vehicle by a person using the vehicle with permission. We do not think the concept of imputing negligence which is used in the

*Not to Sue Negligent Driver—Plath v. Justus,* 12 BC Ind. & Com. L. Rev. 1278 (1971).

Wisconsin law distinguishes our law from the New York law. Under both statutes, the driver's liability is grounded in common law and the other person's liability is grounded in the statutory enactment. The purpose of the Wisconsin statute is similar to the purpose of the New York statute—to impose financial responsibility for damages not only on the negligent driver who causes the injury but also on some other person connected in some manner with the car or driver. In New York the responsibility is imposed on the owner of the automobile. In Wisconsin the responsibility is imposed on the adult sponsor of a minor driver. We do not think *Plath* is distinguishable.

For the reasons set forth, we hold that plaintiff's action pursuant to sec. 343.15(2), Stats., against the sponsor's insurer is not barred by the release in the instant case.

*By the Court.*—Decision of the court of appeals affirmed.

COFFEY, J. (*dissenting*). I dissent in this case because the majority, expanding upon the reasonable requirements contained in sec. 343.15(2), Stats., has overlooked the impact of their decision upon the rationale for the settlement of cases as set forth in *Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963). The plaintiff in this case executed a *Pierringer*-type release that, according to its terms, released the driver, Jimmy Zollicoffer; the owner of the vehicle, Dorothy Laurence; and the American Family Insurance Company (the owner's insurer), of:

". . . that fraction, portion or percentage of the total cause of action of claim for damages I/we now have or may hereafter possess against all parties responsible for my/our damages which shall by trial or other disposition, be determined to be the sum of the fractions, portions, or percentages of causal negligence for which the par-

ties herein released are found to be liable to me/us as a consequence of the above accident."

At the same time, the release expressly reserved:

". . . the balance of the whole cause of action or any other claim of whatever kind or nature not released which I/we may have or hereafter have against any other person or persons arising out of the above accident."

The effect of a *Pierringer* release is that it shields the settling defendant from a potential claim for contribution by the nonsettling party (defendant) thus allowing those who choose with full knowledge and deliberation to compromise their claim to buy their way out of the lawsuit. At trial, the primary inquiry is to determine the percentage of causal negligence attributable to the nonsettling defendant—in this case Brooksie Zollicoffer, the sponsor of her son, Jimmy Zollicoffer, (sec. 343.15(2), Stats.). Although the settling defendants (Jimmy Zollicoffer, Dorothy Laurence and American Family Insurance Co.), by virtue of the *Pierringer* release, are no longer parties to the action, their negligence, if any, must be considered only for the purpose of allocating the causal negligence between the plaintiff and the settling and nonsettling defendants. As this court stated in *Pierringer v. Hoger, supra:*

"The issue between the plaintiff and the nonsettling defendant, which should be framed by an amendment to the pleadings, is the percentage of causal negligence, if any, of the nonsettling defendant, *but such percentage of negligence can only be determined by a proper allocation of all the causal negligence, if any, of all of the joint tort-feasors and of the plaintiff if contributory negligence is involved."* (Emphased supplied.) *Id.* at 192–193.

Thus, the negligence of the defendant is not judged in a vacuum; instead, a determination is made as to each and every party involved in the accident—the plaintiff, settling defendants, etc. A *Pierringer* release in effect

states that the consideration for which the release was granted will serve to satisfy whatever percentage of negligence is found to be attributable to the settling parties at trial. It is in effect a gamble: the plaintiff surrenders a portion of his cause of action without knowing in advance how large or small the share he has given away will be—perhaps even the entire cause of action. The effect of the plaintiff's gamble on the nonsettling defendant(s) has been well documented. *Peiffer v. Allstate Ins. Co.*, 51 Wis.2d 329, 187 N.W.2d 182 (1971). With the execution of a *Pierringer* release, the plaintiff has been satisfied to the extent of the negligence of the settling defendant(s). Thus, all that the nonsettling defendant will be liable for is the amount of damages proportionate to the percentage of negligence attributable to him. In other words, he will only be required to pay his "fair share" of the damages caused—no more, no less.

A prime example of how the nonsettling party's liability is to be determined is expressed in the case of *Peiffer v. Allstate Ins. Co., supra.* In *Peiffer,* the plaintiff executed a release identical to the one in the case at bar except that it involved a specific reservation of rights against the driver of the automobile involved in the accident and the driver's insurer. The plaintiff argued that this particular reservation entitled him to seek recovery for whatever portion of the cause of action he chose to pursue against the nonsettling defendant, possibly even the whole of the judgment, if he so desired. The court rejected this contention, holding that the plaintiff had been satisfied to the extent of the negligence of the settling defendants at the time he executed their release thus, his recovery against the nonsettling parties was limited to that "unsatisfied percentage of the damages—the percentage attributable to the nonsettling tortfeasor . . . ." *Peiffer, supra* at 335. In other words, *Peiffer* stands specifically for the point that the nonset-

tling defendant is responsible only for the percentage of negligence that is not attributable to the settling defendants.

As basic and well-understood as the above principles may be, their application to the present case along the lines mandated by the majority presents problems. According to *Pierringer*, at the trial against the nonsettling defendant, Brooksie Zollicoffer, (sponsor of the minor driver, Jimmy Zollicoffer) a determination must be made as to the percentages of negligence attributable to each of the parties involved in the accident. Then, as per the *Peiffer* decision, the nonsettling defendant would be responsible only for that amount not satisfied by the previously released defendants—the "unsatisfied percentage of the damages."

However, in the case at bar there exists no unsatisfied percentage of the plaintiff's cause of action. When Leon Swanigan (plaintiff) executed the release involving Jimmy Zollicoffer, Dorothy Laurence and her insurer he in effect released all the parties to the action who were actively negligent and all those who could have been responsible for a percentage of the total negligence.[1] The amount satisfied by the released defendants in fact equals 100%, thus leaving nothing to be assigned to the nonsettling defendant, Brooksie Zollicoffer. Therefore, according to the procedure of *Pierringer* and the rationale of *Peiffer*, it is impossible to hold the nonsettling defendant liable for any damages. To rule otherwise would be to violate the firmly established principles set forth in *Pierringer* and *Peiffer* and render their continued value as precedent worthless.

---

[1] The discussion herein dismisses any negligence that could be attributable to Maria Busalacchi, as her negligence, if any, is not at issue in this case.

The majority, in its effort to afford the plaintiff full compensation, has announced a rule that confounds the law relating to the effect of a *Pierringer* release. As stated before, the execution of every release of this type is a gamble. The plaintiff is releasing a part of his cause of action without being sure of whether or not he is getting his money's worth. But as in every gamble, there is also a risk of loss. This is not the first time that a plaintiff has settled for less than his case would conceivably have been worth with a favorable jury verdict. With a jury trial, you always take a chance. You may be either a king or a pauper when the judge gavels the next case.

In any event, the rule of *Peiffer* remains the same: the nonsettling defendant is responsible only for that portion of the causal negligence attributable to him. Where, as in this case, the plaintiff released all of the parties whose causal negligence contributed to the plaintiff's injuries, the nonsettling defendant cannot be held liable because of the execution of the release.