Michael J. TEIGEN, Claire A. Teigen and Marilyn Teigen,
Plaintiffs-Respondents,

v.

JELCO OF WISCONSIN, INC., a domestic corporation, and
Blue Cross & Blue Shield United of Wisconsin, a
domestic insurer, Defendants,

RURAL MUTUAL INSURANCE COMPANY, a domestic in-
surer, Defendant-Respondent,

MISSION INSURANCE COMPANY, a foreign insurer,
Defendant-Appellant.

Supreme Court

No. 84–207. *Argued February 27, 1985.—Decided May 15, 1985.*

(On certification from the court of appeals.)
(Also reported in 367 N.W.2d 806.)

For the defendant-appellant there were briefs by *George W. Greene, Jerome C. Johnson* and *Prosser, Wiedabach & Quale, S.C.*, Milwaukee, and oral argument by *Mr. Johnson.*

For the plaintiffs-respondents there was a brief by *Jonathan A. Mulligan* and *Ruetz, Lehner, Davison & Mulligan, S.C.*, Kenosha, and oral argument by *Jonathan A. Mulligan.*

For the defendant-respondent there was a brief by *David W. Paulson, Edward J. Bruner, Jr.* and *Heft, Dye, Heft & Paulson, S.C.,* Racine, and oral argument by *David W. Paulson.*

LOUIS J. CECI, J.   This appeal is before this court on certification from the court of appeals, pursuant to sec. (Rule) 809.61, Stats.,[1] and is from an order of the circuit court for Kenosha county, Earl D. Morton, circuit judge, granting a motion to dismiss Rural Mutual Insurance Company (Rural) from this action pursuant to a "Loy Release/Covenant Not To Sue" executed by the plaintiffs. We affirm the order of the circuit court.

This case arises from an accident involving a motorcycle driven by the plaintiff, Michael J. Teigen, and a school bus owned by the defendant, Jelco of Wisconsin, Inc. (Jelco). Michael Teigen suffered extensive personal injuries as a result of the accident, and, consequently, Michael and his parents commenced this action. The defendants include Jelco; Jelco's primary insurer, Rural; and Jelco's excess insurer, Mission Insurance Company (Mission).[2] Rural's insurance policy with Jelco provides primary coverage up to $500,000. Mission's insurance policy with Jelco provides excess coverage of $2,000,000 over and above the primary coverage afforded by Rural. The amended complaint seeks damages on the cause of action for Michael Teigen in the sum of $1,800,000 and

---

[1] Section 809.61, Stats., reads as follows:
"809.61   **Rule (Bypass by certification of court of appeals or upon motion of supreme court).** The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion. The supreme court may refuse to take jurisdiction of an appeal or other proceeding certified to it by the court of appeals."

[2] Blue Cross and Blue Shield United of Wisconsin is also named as a party defendant, due to potential subrogation interests.

on the cause of action for Michael's parents, Claire and Marilyn Teigen, in the sum of $200,000.

The record discloses two documents entitled, "Structured Settlement Agreement" (signed by the plaintiffs; their attorney; and the attorney for Jelco, Rural and Patricia Schilling, the driver of the bus at the time of the accident) and "Loy Release/Covenant Not To Sue" (signed by the plaintiffs). In consideration for this release, the plaintiff is to receive a cash payment by Rural of $130,000, along with the structured settlement agreement, in the form of an annuity, that will cost Rural an additional $260,000. The total settlement will mean a cash outlay by Rural of approximately $390,000. Although this cash outlay is less than Rural's policy limit, it is undisputed that if Michael Teigen lives to his normal life expectancy, he will receive $1,160,250, of which more than $600,000 is guaranteed.

The "Loy Release/Covenant Not To Sue" was specifically based on this court's decision in *Loy v. Bunderson*, 107 Wis. 2d 400, 320 N.W.2d 175 (1982). Briefly, the release in this case provides for the partial release of Jelco and Schilling up to $500,000 and for any amounts in excess of Mission's $2,000,000 coverage. Additionally, it provides for the release of Rural from all liability. Finally, although the release reserves any claims the plaintiffs may have against Mission up to the limit of Mission's policy, any potential recovery against Mission will be credited in the amount of $500,000—the limit of Jelco's primary coverage with Rural.

In accordance with the settlement agreement, Rural moved for dismissal on the basis that it had met its obligation to its insured, Jelco, by obligating itself to extensive payments to the plaintiff under the structured settlement agreement. Based upon our decision in *Loy*, 107 Wis. 2d 400, the trial court granted the dismissal, holding that Rural's policy limit had been exhausted by

the settlement with the plaintiff, that the obligation of good faith owed by Rural to Jelco had been fulfilled, and that Rural had no further obligation to any excess insurer such as Mission. Hence, the issue in this case is whether the trial court correctly relied on this court's holding in *Loy* when it dismissed Rural from this action. This issue involves a question of law, and, therefore, we need not give special deference to the determination of the trial court. *Gross v. Lloyds of London Ins. Co.*, 121 Wis. 2d 78, 84, 358 N.W.2d 266 (1984), citing with approval *LePoidevin v. Wilson*, 111 Wis. 2d 116, 121, 330 N.W.2d 555 (1983).

A necessary starting point is a review of our holding in *Loy*, 107 Wis. 2d 400. In *Loy*, co-defendant Truesdill was insured with General Casualty Company (General) with a policy limit of $50,000. Additionally, Truesdill's employer was named as a co-defendant and was insured with Travelers Insurance Company (Travelers) with a limit of $500,000. Travelers' policy with the employer specifically provided that coverage would be " 'excess insurance over any other valid and collectible insurance available to the *Insured.*' " *Id.* at 404 (emphasis in original).

Despite the wording in Travelers' policy, we noted in *Loy* that Travelers was not a "true excess carrier." We reasoned,

"[T]his is not a situation in which a particular named insured purchased basic coverage and then purchased additional coverage in excess of its primary contract. Here, the fact of excess coverage is a mere coincidence. Truesdill contracted for his own insurance with General Casualty with limits to $50,000, while [the employer] separately contracted with Travelers for coverage with limits of $500,000. It is only because of the recital in Travelers' policy that its coverage is claimed to be excess over the limits afforded by the General Casualty policy. In the absence of General Casualty's policy, Travelers'

coverage would commence at 'dollar-one.' *It is clear,
then, that Travelers is not a true excess carrier, because
the policy was not written under circumstances where
rates were ascertained after giving due consideration to
known existing and underlying basic or primary policies.*
Nothing in the record shows that [the employer] was in
any way benefitted in its premium structure by reason of
the existence of Truesdill's General Casualty policy." *Id.*
at 404–05 (emphasis added).

A settlement agreement was reached in *Loy* whereby
General paid $20,000 to the plaintiff and obtained a re-
lease of both General and its insured, Truesdill, up to
General's policy limit of $50,000. Additionally, Truesdill
was released for any amounts in excess of Travelers'
policy limit of $500,000, while reserving the plaintiff's
claim against Travelers for any amount over $50,000 and
under $500,000. Based on this settlement agreement, the
trial court approved a "special release" that had the ef-
fect of releasing General and Truesdill. Travelers ob-
jected to the trial court's order which held that the
plaintiff could pursue his cause of action against Travel-
ers, that Travelers had a duty to defend Truesdill, and, if
Truesdill was found to have been liable, that Travelers
had a duty to pay any judgment based on Truesdill's neg-
ligence in excess of $50,000.

In upholding the trial court's order, we concluded that
Travelers was not aggrieved by the settlement. In fact,
Travelers benefited by the agreement because any poten-
tial judgment against Travelers would be credited with
$50,000—the limit of General's policy with Truesdill. Ad-
ditionally, by the terms of the settlement, any possibility
of a verdict in excess of Travelers' policy limit was obvi-
ated, therefore eliminating any possibility of a bad faith
claim against Travelers by any insured. We concluded,

"Thus, we see no fundamental unfairness in this agree-
ment. General Casualty has discharged its duty under its
policy and has a right to be exonerated from further lia-

bility. It has satisfied the claim of the plaintiff to the extent of its policy limits. Its insured Truesdill is not exposed to any excess liability by any conduct of General Casualty." *Id.* at 418.

Returning to the case at hand, Mission argues that *Loy* is inapplicable here because, unlike Travelers' policy in *Loy,* Mission's policy with Jelco is a true excess insurance policy. Mission contends that Jelco's premium was set and its policy was written based on the coverage afforded to Jelco by Rural. Mission maintains that the premium was calculated with the expectation that the cost of defense of any claim would be borne by Rural, the primary carrier. This being the case, Mission believes that it would be grossly unfair to allow Rural to pay less than its policy limit of $500,000, thus forcing Mission to take over the defense of this action.

After a review of our reasoning in *Loy,* we conclude that Mission's argument is without merit and that the distinction between Travelers' policy in *Loy* and Mission's policy in this case is a distinction without a significant difference. We, therefore, hold that the trial court correctly applied our decision in *Loy* in dismissing Rural from this action.

If the issue of the existence of a true primary/excess insurance situation had been fundamental to our reasoning behind the *Loy* principle, then our holding in *Loy* would not control in the present suit. However, that is not the case. The rationale behind our affirmance of the "Loy Release/Covenant Not To Sue" is not anchored to the issue of whether a true primary/excess insurance situation exists. The desirability of *Loy*-type agreements lies in the encouragement of partial settlements in future cases, thereby fostering effective and expeditious resolution of lawsuits. Partial settlements not only benefit the parties involved, but the justice system as a whole. Fur-

ther, we reemphasize that "public interest requires that a plaintiff be permitted to settle claims against some of the exposed parties without releasing others." *Id.* at 425. *Accord, Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963), and *Swanigan v. State Farm Ins. Co.,* 99 Wis. 2d 179, 299 N.W.2d 234 (1980).

Our holding that the trial court correctly dismissed Rural from this action is based on two additional conclusions: One, that Rural has satisfied its duty to defend and its obligation of good faith to Jelco, its insured, and, two, that Rural has not breached any duty to Mission by negotiating a settlement with the plaintiff.

First, this court has recognized that "[p]olicies of liability insurance impose two duties on the insurer with respect to the insured—the duty to indemnify and the duty to defend." *Gross,* 121 Wis. 2d at 84, citing 7C J. Appleman, *Insurance Law and Practice,* section 4684 at 80–82 (Berdal ed. 1979). Mission argues that Rural should not be relieved from its contractual duty to defend Jelco because it has not paid the full policy limit of $500,-000. We disagree.

Rural's policy provides that it shall have the right and duty to defend any suit against Jelco but it shall not be obligated "to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or *settlements.*" (Emphasis added.) The trial court correctly concluded that Rural has exhausted its liability by virtue of the *Loy* release. The effect of the settlement is that Rural has discharged *in toto* its obligation to its insured. The Teigens' claim against Jelco and Rural has been satisfied, and Rural and Jelco have been released from any and all liability just as if the full $500,000 policy limit had been paid in settlement. Rural has carried out the terms of its contract with Jelco, has fully protected itself and its insured from further ex-

posure, and, therefore, Rural has no further contractual duty to defend Jelco.

In addition to Rural's contractual duty to defend Jelco, it is well established in Wisconsin that Rural has an obligation to its insured to exercise good faith in the settlement of the plaintiffs' claim. *Alt v. American Family Mut. Ins. Co.*, 71 Wis. 2d 340, 237 N.W.2d 706 (1976). The basis of this type of bad faith claim was explained by this court as follows:

"This obligation, which arises by virtue of the contractual relationship of the insurer and the insured, reflects the fact that in the standard liability insurance contract the insured surrenders completely the right to control the settlement or litigation of the victim's claim within the limits of the insurer's exposure. The threat to the insured is obvious: If the insurer fails to settle a third-party claim within the limits of the policy and chooses instead to litigate the matter, the insured will be exposed to that portion of any judgment which exceeds the policy limits." *Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis. 2d 56, 60, 307 N.W.2d 256 (1981).

We conclude that Rural has met its obligation of good faith in this case. Jelco has been fully protected from any liability arising out of the accident by the plaintiffs' release of all claims against Jelco other than those covered under Mission's policy. Additionally, a benefit to Mission is recognized; Mission is free from any potential bad faith claim against it since Jelco is no longer exposed to any judgment exceeding Mission's policy limit which could later form a basis for such a claim.

Finally, Mission argues that the trial court erred in finding that once Rural met its obligation of good faith to Jelco, Rural owed no further obligation to Mission. Mission believes that Rural breached a duty it owed to Mission by wrongfully attempting to avoid its responsibility

to defend the suit until it fully paid its underlying limit of $500,000. We also disagree with this assertion.

The issue of whether an excess carrier can pursue a bad faith cause of action against a primary carrier as a result of a settlement was decided by this court in *Loy.* In *Loy,* Travelers asserted that it had a claim against General, the primary carrier, for the expenses it incurred in contesting General's "bad faith" in negotiating and entering into a settlement with the plaintiff, for abandoning the defense of General's insured before making full payment of the policy limit, and for bad faith failure to settle within the primary limit, thus exposing Travelers to potential liability. *Id.* at 426.

We held that the trial court clearly was correct in barring those causes of action asserted by Travelers against General. First, we found that in *Loy,* as in this case, there was no contract between the primary insurer and excess insurer that imposed any contractual obligation on the primary carrier to defend claims that arose, or that might arise after the primary carrier settled out, within the parameters of the excess carrier's coverage. We quoted with approval from *United States Fidelity and Guaranty Co. v. Tri-State Ins. Co.,* 285 F.2d 579 (10th Cir. 1960), in part as follows:

" 'The duty to defend is personal to each insurer. The obligation is several and the carrier is not entitled to divide the duty nor require contribution from another absent a specific contractual right.' P. 582." *Id.* at 427.

Second, we held in *Loy* that Travelers could not maintain a bad faith claim because there was no contract between General and Travelers. *Id.* at 428. This conclusion was based on our decision in *Kranzush,* 103 Wis. 2d 56, where we stated,

"The insurer's duty of good faith and fair dealing arises from the insurance contract and runs to the *insured.*" *Id.* at 73 (emphasis added).

In *Kranzush*, we refused to extend the obligation of good faith beyond the relationship between the insurer and its insured.

Mission cites authority for the contention that a primary carrier's duty to exercise good faith in the settlement of claims extends to an excess insurer.[3] However, in these cases, the excess insurer's right to recover is predicated on the primary insurer's breach of its duty to its insured to negotiate and settle in good faith which results in damage to the insured. Consequently, the rights of the insured are subrogated to the excess insurer, often by means of an assignment clause in the excess carrier's policy. *See, Loy,* 104 Wis. 2d at 430. In the instant case, Jelco has suffered no loss. We hold that since there has been no breach by Rural, Mission, as a subrogee of Jelco, has no cause of action for bad faith against Rural.

In conclusion, we hold that the trial court correctly applied our holding in *Loy* to the facts in this case in dismissing Rural from this action. First, Rural has satisfied all duties it owes to its insured, Jelco. Second, we recognize the fact that Mission's policy with Jelco may have been written based on the coverage afforded to Jelco by Rural and that the premium may have been calculated with the expectation that the cost of defense of any claim would be borne by Rural. However, no unfair burden is being placed on Mission. Mission, like the excess insurer in *Loy,* is being asked to do no more than what it contracted for—to provide coverage to Jelco in excess of that provided by Rural. As a result of this settlement, Mission

---

[3] *See, Valentine v. Aetna Ins. Co.,* 564 F.2d 292 (9th Cir. 1977); *Allstate Ins. Co. v. Reserve Ins. Co.,* 116 N.H. 806, 373 A.2d 339 (1976); *Home Insurance Co. v. Royal Indemnity Co.,* 68 Misc. 2d 737, 327 N.Y.S.2d 745, *aff'd* 332 N.Y.S.2d 1003 (1972); and *American Fidelity & Cas. Co. v. All American Bus Lines, Inc.,* 190 F.2d 234 (10th Cir. 1951). *Accord,* Bloom, "Recovery Against Primary Insurer By Excess Carrier For Bad Faith Or Negligent Failure To Settle," 36 Ins. Counsel J. 235 (1969).

will incur only those costs for which it is contractually responsible and for which it has already collected a premium. We do not believe that it is unreasonable in this case for Mission to defend against the claims falling within the parameters of its coverage.

In keeping with previous decisions of this court where we have encouraged partial settlements, we affirm the trial court's order dismissing Rural from this action.

*By the Court.*—The order of the circuit court is affirmed.

STEINMETZ, J. (concurring). I expressed my dissent with the decision in *Loy v. Bunderson,* 107 Wis. 2d 400, 320 N.W.2d 175 (1982), in which this court gave birth to the phenomenon of stressing settlement over specific contractual terms. This court was created, designed, and hopefully operates as a collegiate or collegial body. I define such body as marked by the authority being vested equally in each of the number of colleagues, in this case, consisting of seven justices. The majority of the colleagues decided *Loy* and that is now the law. Therefore, I will not continue my dissent in this decided area of the law.

I concur in this case because I believe the majority opinion makes it clear that the method of settlement used by a primary carrier, if acceptable, will bring into effect the application of the excess carrier's contract. The method of settlement the primary carrier uses will have to exhaust its potential coverage to avoid the duty to defend continuing beyond the settlement. The primary carrier's contract will have to state, as this one did, that the duty to defend its insured ends when its contract's limits have been exhausted either by payment of judgments, pledge of limits or *settlements.* Majority op. at page 8.[1]

---

[1] Interpretation and application by the court of *Gross v. Lloyds of London Ins. Co.,* 121 Wis. 2d 78, 84, 358 N.W.2d 266 (1984) and *Loy v. Bunderson,* 107 Wis. 2d 400, 320 N.W.2d 175 (1982).

The excess carrier's exposure and limit of participation must be protectively limited to its coverage by the settlement entered into by the primary carrier.[2] The insured must receive full protection due from the primary carrier in the settlement pursuant to the terms of its policy. If all of those events occur in the settlement between the claimant and the primary carrier, then it does not matter whether the insured has a primary carrier and excess carrier or receives that protection fortuitously as in *Loy*, insofar as settlements are concerned.

---

[2] In this case, the excess carrier was protected in the settlement from "any potential bad faith claim against it since Jelco is no longer exposed to any judgment exceeding Mission's policy limit which could later form a basis for such a claim." Page 9.