Dan DANBECK, Plaintiff-Respondent,†

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Appellant.

Court of Appeals

*No. 99–1142. Submitted on briefs October 8, 1999.—Decided
December 23, 1999.*

## 2000 WI App 26

(Also reported in 605 N.W.2d 925.)

†Petition to review granted.

417

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ward Richter* and *John M. Christenson* of *Bell, Gierhart & Moore, S.C.* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael J. Luebke* of *Gingras, Cates & Luebke, S.C.* of Madison.

Before Eich, Vergeront and Roggensack, JJ.

¶ 1. VERGERONT, J. This appeal concerns the interpretation of a provision in an underinsured motorist (UIM) policy that coverage would be provided "only after the limits of liability under bodily injury liability bonds or policies have been exhausted by payment of judgment or settlements." American Family Mutual Insurance Company sought summary judgment in the trial court on the ground that Dan Danbeck, its insured, had not satisfied this clause and therefore was not entitled to benefits under his UIM policy. The trial court denied the motion, concluding the clause was reasonably susceptible to more than one interpretation and construing it against the insurer. On appeal, American Family asserts that the language of the

clause is clear and unambiguous, and precludes Danbeck's recovery under the policy. We agree, and therefore reverse.

## BACKGROUND

¶ 2.   The facts are not disputed. Danbeck was seriously injured when the bicycle he was riding was struck by a car driven by George Horne. At the time of the accident, Horne had $50,000 in liability coverage through Country Mutual Insurance Company. Danbeck had UIM coverage with limits of $100,000 under an endorsement to a policy with American Family. The UIM endorsement provided, in pertinent part:

> [American Family] will pay compensatory damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle**. The **bodily injury** must be sustained by an **insured person** and must be caused by accident and arise out of the **use** of the **underinsured motor vehicle**.

> **You** must notify **us** of any suit brought to determine legal liability or damages. Without **our** written consent **we** are not bound by any resulting judgment.

> **We** will pay under this coverage only after the limits of liability under any **bodily injury** liability bonds or policies have been exhausted by payment of judgments or settlements.

¶ 3.   Danbeck settled his claim with Horne and Country Mutual for $48,000. He then sought compensation from American Family under his UIM policy for damages in excess of $50,000, the liability limit in Horne's policy. When American Family declined to pay

the claim on the ground that Danbeck had failed to exhaust the limits of liability under Horne's policy, Danbeck filed this action.

¶ 4. In denying American Family's motion for summary judgment, the trial court first decided the exhaustion clause was ambiguous and could reasonably be interpreted to provide coverage as long as Danbeck was not seeking to recover any part of the first $50,000 of his damages from American Family. The court then decided that the principle of construing ambiguous insurance contract provisions in favor of the insured, and several public policies, warranted interpreting the clause as Danbeck advocated. Because there was no dispute over the value of Danbeck's claim, the parties stipulated to the entry of judgment for Danbeck in the amount of $20,000.

## DISCUSSION

¶ 5. We review the grant or denial of summary judgment de novo and apply the same standards employed by the trial court. *See Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48, 49 (Ct. App. 1994). Summary judgment is proper if there are no disputed issues of fact and one party is entitled to judgment as a matter of law. Section 802.08(2), STATS. The interpretation of an insurance contract is also a question of law, which we review de novo. *Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212, 341 N.W.2d 689, 691 (1984).

¶ 6. We construe the words in an insurance contract as a reasonable person in the position of an insured would understand them. *See Garriguenc v. Love*, 67 Wis. 2d 130, 134–35, 226 N.W.2d 414, 417

(1975). A word or phrase in an insurance contract is ambiguous if it is susceptible to more than one reasonable construction, and whatever ambiguity exists is resolved against the insurer, as the drafter. *See id.* at 135, 226 N.W.2d at 417. However, when the terms of a policy are plain on their face, we may not rewrite them. *See id.*

¶ 7.    American Family contends the language in its exhaustion clause plainly requires that, as a precondition to recovering UIM benefits, an insured must receive in full the policy limits of any applicable liability policy. Danbeck maintains it is at least equally reasonable that a lay person would understand that "a settlement which barred any further claim against those limits and gave credit for payment of the full underlying liability limits would effectively exhaust those limits." We do not agree with Danbeck that the policy language at issue is reasonably susceptible to this construction. The phrase "limits of liability . . . exhausted by payment of judgments or settlements" unambiguously requires that the UIM policyholder receive payment from the liability insurer equal to the limits of applicable liability policies.

¶ 8.    Danbeck is correct that words in insurance contracts that are used in common speech are to be given the meaning they have for lay people. *See Henderson v. State Farm Mut. Auto. Ins. Co.*, 59 Wis. 2d 451, 459, 208 N.W.2d 423, 427 (1973). We may use a dictionary to ascertain the common meaning. *See id.* at 457–58, 208 N.W.2d at 426.[1] The relevant definitions of the verb "exhaust" in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 796 (1993) are:

---

[1] Resort to a dictionary to establish the common meaning of words does not mean the language is ambiguous. *State v. Sample*, 215 Wis. 2d 487, 499–500, 573 N.W.2d 187, 192 (1998).

**4 a :** to use up the whole supply or store of **:** expend or consume entirely . . . **[5] b :** to make use of or try out or otherwise account for the whole number of . . . **c :** to take complete advantage of (legal remedies).

We conclude that the only reasonable meaning of "exhaust[ing]" the "limits of liability" is entirely using up the limits.

¶ 9.   Danbeck does not disagree with this meaning of exhaust, but contends that, whether the liability insurer writes a check pursuant to a settlement agreement for the full policy limits of $50,000, or for some discounted amount, the effect is the same so long as credit is given for the full policy limits. However, while a credit may have *the effect* of exhausting liability limits, it is not an alternative means of exhaustion available under the contract language. Danbeck's UIM policy specifically requires that the exhaustion of liability limits be "by *payment* of judgments or settlements." (Emphasis added.) "Payment" is defined as: "**1 :** the act of paying or giving compensation **:** the discharge of a debt or an obligation . . . **2 :** something that is paid **:** something given to discharge a debt or obligation or to fulfill a promise." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1659 (1993). "Payment" has only one reasonable meaning in this clause: compensation paid by the liability insurer and received by the insured. Therefore, a reasonable policyholder would understand that liability limits "*exhausted by payment* of judgements or settlements" means that the UIM policyholder must receive payment from the liability insurer equal to the limit of the liability policy. Treating exhaustion by payment plus credit as "effectively" the same as by exhaustion by payment is an impermissible rewriting of the plain language of the contract. *See City of Edgerton v. General Cas. Co.*, 184 Wis. 2d

750, 781, 517 N.W.2d 463, 477 (1994) ("suit" plainly denotes court proceedings, not a "functional equivalent," to a reasonable policyholder).

¶ 10.   Both parties refer us to decisions from other jurisdictions to support their respective positions on the proper construction of the exhaustion clause. We observe that a number of cases have found the phrase "exhausted by payment of judgments or settlements," either in a statute or an insurance contract or both, to unambiguously require that the insured receive the full amount of the liability policy limits. *See Robinette v. American Liberty Ins. Co.*, 720 F. Supp. 577, 580 (S.D. Miss. 1989); *Continental Ins. Co. v. Cebe-Habersky*, 571 A.2d 104, 106 (Conn. 1990); *Federal Ins. Co. v. Watnick*, 607 N.E.2d 771, 772 (N.Y. Ct. App. 1992); *Mann v. Farmers Ins. Exch.*, 836 P.2d 620, 621 (Nev. 1992); *Lewis v. State Farm Mut. Auto. Ins. Co.*, 857 S.W.2d 465, 466–67 (Mo. Ct. App. 1993).[2] Of the cases cited by Danbeck, none hold that this particular language is ambiguous: either the court is interpreting a clause that does not contain the language "exhaustion by payment of settlement or judgment" at all, *see Kelley Co. v. Central Nat'l Ins. Co.*, 662 F. Supp. 1284, 1289 (E.D. Wis. 1987), or the court is interpreting other words in the exhaustion clause. *See Mulholland v. State Farm Mut. Auto. Ins. Co.*, 527 N.E.2d 29, 35 (Ill.

---

[2] American Family also cited *Amica Mut. Ins. Co. v. Morrison*, 536 A.2d 199 (N.H. 1987), as such a decision but the court there decided a different issue: whether the arbitration clause together with the exhaustion clause created an ambiguity such that the exhaustion clause was void altogether. The court decided that the interplay of the two clauses did not create an ambiguity, and the insured did have to exhaust the limits of the liability policy; but the question what "exhaustion by payment" meant was not raised or decided.

App. Ct. 1988) (construing "apply").[3] Thus, the cases from other jurisdictions support our conclusion that the contested language is not ambiguous.

¶ 11.   Danbeck also contends that American Family's construction of the clause is inconsistent with the public policy of Wisconsin. He supports this argument with cases from other jurisdictions, which may be grouped into three categories: those holding that a similar exhaustion clause is void altogether because it is inconsistent with the state's UIM statute;[4] those holding that the clause is void insofar as it does not permit a settlement for less than the liability limits if recovery is sought under an UIM policy only for amounts over that liability limit, because of the policies expressed in the state's UIM statute;[5] and those holding, in the absence of a contractual exhaustion clause, that an insurer's refusal to pay any benefits to its insured under an UIM policy because the insured settled for less than the liability limits, or did not obtain the insurer's consent for a settlement even if the settlement were for the liability limits, is inconsistent with the state's UIM statute (although the insurer may deduct the liability

---

[3] The complete clause was, "There is no coverage until the limits of liability of all bodily injury liability insurance policies or bonds that apply to the insured's bodily injury have been used up by payment of judgments or settlements." *Mulholland v. State Farm Mut. Auto Ins. Co.*, 527 N.E.2d 29, 35 (Ill. App. Ct. 1988).

[4] *See Schmidt v. Clothier*, 338 N.W.2d 256, 261 (Minn. 1983); *Mann v. Farmer's Ins. Exch.*, 836 P.2d 620, 621 (Nev. 1992).

[5] *See New Hampshire Ins. Co. v. Knight*, 506 So. 2d 75, 77 (Fla. Dist. Ct. App. 1987); *Weinstein v. American Mut. Ins. Co.*, 376 So. 2d 1219, 1220 (Fla. Dist. Ct. App. 1979); *Brown v. USAA Cas. Ins. Co.*, 840 P.2d 1203, 1203–04 (Kan. Ct. App. 1992).

limits from the insured's damages—essentially the same as Danbeck's construction of the exhaustion clause).[6] Because these cases are based on the public policies of other states as expressed in the statutes of those states, they are persuasive to a Wisconsin court only if the public policies expressed in those statutes are similar to the public policies expressed in Wisconsin's UIM statute. Not all jurisdictions have concluded that the exhaustion clause as we have construed it violates the public policy of its state. *See, e.g., Lewis,* 857 S.W.2d at 467.

¶ 12. Danbeck does not relate Wisconsin's UIM statute, § 632.32(4m) and (5), STATS., to those in the states of the cases on which he relies. He does not argue that the exhaustion clause as we have construed it is inconsistent with Wisconsin statutes or public policy expressed in those statutes. Because we do not consider

[6] *See Leal v. Northwestern Nat'l County Mut. Ins. Co.,* 846 S.W.2d 576, 579 (Tex. App. 1993); *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105, 1111–12 (Okla. 1991); *Hamilton v. Farmers Ins. Co.,* 733 P.2d 213, 220 (Wash. 1987); *Elovich v. Nationwide Ins. Co.,* 707 P.2d 1319, 1321–25 (Wash. 1985); and *Longworth v. Van Houten,* 538 A.2d 414, 424 (N.J. Sup. Ct. App. Div. 1988).

Danbeck also refers us to *Mulholland v. State Farm Mut. Auto Ins. Co.,* 527 N.E.2d 29, 35, 40 (Ill. App. Ct. 1988), in support of this argument. This case, as we have noted above, construed a word not contained in our exhaustion clause, decided it was ambiguous, and decided it was inconsistent with the repayment rights and the arbitration clauses in the contract, and with public policy as expressed in the statute on underinsured motorists. *Mulholland* was decided before the Illinois legislature passed a statute permitting just such an exhaustion clause. The court in *Lemna v. United Serv.'s Auto. Ass'n,* 652 N.E.2d 482, 484 (Ill. App. Ct. 1995), held the statutory language to be clear and unambiguous and therefore decided that consideration of public policy was unwarranted.

arguments that are not developed, *see State v. Gulrud*, 140 Wis. 2d 721, 730, 412 N.W.2d 139, 142–43 (Ct. App. 1987), we do not further consider whether the legislature has expressed any public policy that might bear on the validity of this exhaustion clause. Instead, we confine our analysis to the only argument that Danbeck does develop on public policy grounds.

¶ 13.  Danbeck contends that "Wisconsin courts have long supported settlements and opposed conditions which create obstacles to settlement." Danbeck relies on *Teigen v. Jelco of Wisconsin, Inc.*, 124 Wis. 2d 1, 367 N.W.2d 806 (1985), in which the supreme court explained the rationale of its approval in *Loy v. Bunderson*, 107 Wis. 2d 400, 320 N.W.2d 175 (1982), of a release and covenant not to sue as to one insurer while retaining rights against another insurer:

> The rationale behind our affirmance of the "Loy Release/Covenant Not To Sue" is not anchored to the issue of whether a true primary/excess insurance situation exists. The desirability of *Loy*-type agreements lies in the encouragement of partial settlements in future cases, thereby fostering effective and expeditious resolutions of lawsuits. Partial settlements not only benefit the parties involved, but the justice system as a whole. Further, we reemphasize that "public interest requires that a plaintiff be permitted to settle claims against some of the exposed parties without releasing others." [*Loy*, 107 Wis. 2d] at 425, 320 N.W.2d 175. *Accord, Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963), and *Swanigan v. State Farm Ins. Co.*, 99 Wis. 2d 179, 299 N.W.2d 234 (1980).

*Teigen*, 124 Wis. 2d at 7–8, 367 N.W.2d at 809–10.

¶ 14.  We are not persuaded that *Loy* and *Teigen* provide a sufficient public policy rationale to void the

plain language of the exhaustion clause. They do not address UIM insurance, and therefore do not relate the public policy of encouraging partial settlement to any public policies implicated by UIM insurance. Danbeck has not brought to our attention any case that has done so.[7] Although the function of this court is primarily that of correcting error, rather than developing the law, *Cook v. Cook*, 208 Wis. 2d 166, 188, 560 N.W.2d 246, 255–56 (1997), under some circumstances we necessarily perform as a secondary function that which is the primary function of the supreme court: development of the law. *See id.* However, in the absence of an argument, specific to UIM insurance, explaining why the plain language of the clause is inconsistent with Wisconsin public policy as expressed by the legislature

---

[7] Danbeck does argue in a single sentence that our discussion in *Ranes v. American Family Mut. Ins. Co.*, 212 Wis. 2d 626, 569 N.W.2d 359 (Ct. App. 1997), *aff'd* 219 Wis. 2d 49, 580 N.W.2d 197 (1998), supports his position that we should follow the public policy analysis of the cases he cites from other jurisdictions. However, the issue in *Ranes* was whether a requirement in an UIM policy that the insured inform the UIM carrier before the insured settled with a tortfeasor meant the failure to do so discharged the UIM carrier of all obligations regardless of prejudice, even though the contract language did not expressly provide that. We decided that the holding in a majority of jurisdictions that prejudice was required was persuasive because it comported with the general public policy in Wisconsin on similar issues. *Id.* at 632, 569 N.W.2d at 361. That public policy, we concluded, was expressed in statutes and prior supreme court decisions, *id.* at 632–33, 569 N.W.2d at 361, and the supreme court agreed. *Ranes*, 219 Wis. 2d at 55, 580 N.W.2d at 199. The specific public policies *Ranes* identified related to notice provisions in insurance contracts. Danbeck does not develop an argument relating that public policy analysis to the exhaustion clause.

or by the supreme court, we decline to rely on a genera-lized policy favoring settlements to override the plain language of the exhaustion clause.[8]

¶ 15.   In conclusion, the unambiguous terms of American Family's exhaustion clause requires Danbeck, as a precondition to recovering UIM benefits, to obtain payment from the liability insurer equal to the limits of the underlying liability coverage either by settlement or judgment. Since he did not, but obtained less, he is not entitled to UIM benefits.

*By the Court.*—Judgment and order reversed.

---

[8] By way of contrast, in *Sweeney v. General Cas. Co.*, 220 Wis. 2d 183, 197, 582 N.W.2d 735, 740–41 (Ct. App. 1998), *review denied*, 220 Wis. 2d 366, 585 N.W.2d 158 (1998), we did conclude that a reducing clause in an UIM policy was invalid on public policy grounds that had been articulated in prior supreme court decisions and prior decisions of this court relying on those decisions. (That public policy analysis did not take into account the legislatures changes to § 632.32(5), STATS., by 1995 Wis. Act 21. *See Sweeney*, 220 Wis. 2d at 197, 582 N.W.2d at 741–42 (Deininger, J., concurring).)