Dan DANBECK, Plaintiff-Respondent-Petitioner,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Appellant.

Supreme Court

*No. 99–1142. Oral argument November 1, 2000.—Decided
July 6, 2001.*

2001 WI 91

(Also reported in 629 N.W.2d 150.)

For the plaintiff-respondent-petitioner there were briefs by *Michael J. Luebke* and *Gingras, Cates & Luebke, S.C.*, Madison, and oral argument by *Michael J. Luebke*.

For the defendant-appellant there was a brief by *Ward I. Richter, John M. Christenson* and *Bell, Gierhart & Moore, S.C.*, Madison, and oral argument by *Ann E. Curtiss*.

An amicus curiae brief was filed by *Michael Riley* and *Atterbury & Riley, S.C.*, Madison, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. DIANE S. SYKES, J. This case involves an insurance dispute and requires us to interpret language in an underinsured motorist (UIM) policy that obligates the UIM carrier to pay benefits to its insured only after the underinsured motorist's liability limits "have been exhausted by payment of judgements or settlements." The question is whether the policy's exhaustion requirement can be satisfied by a settlement with the underinsured motorist's insurer for less than liability limits, plus a credit to the UIM carrier for the difference. We conclude that the unambiguous language of the insurance policy precludes exhaustion by way of "settlement plus credit" and therefore affirm the court of appeals.

## I

¶ 2. The relevant facts are undisputed. Dan Danbeck was seriously injured when a car driven by George Horne struck his bicycle. Horne had $50,000 of

liability coverage through Country Mutual Insurance Company.

¶ 3. Danbeck was insured by American Family Mutual Insurance Company and had $100,000 of UIM coverage.[1] The UIM policy issued by American Family specified the circumstances under which it would pay UIM benefits:

> [American Family] will pay compensatory damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle**. The **bodily injury** must be sustained by an **insured person** and must be caused by accident and arise out of the **use** of the **underinsured motor vehicle**.
>
> **You** must notify **us** of any suit brought to determine legal liability or damages. Without **our** written consent **we** are not bound by any resulting judgment.
>
> **We** will pay under this coverage only after the limits of liability under any **bodily injury** liability bonds or policies have been exhausted by payment of judgements or settlements.

¶ 4. Danbeck settled with Country and Horne for $48,000 ($47,500 for bodily injury and $500 for the damage to his bicycle). Pursuant to *Vogt v. Schroeder*, 129 Wis. 2d 3, 383 N.W.2d 876 (1986), Danbeck's attorney notified American Family of the pending settlement by letter. The letter also stated that

---

[1] In Wisconsin, UIM coverage is not mandatory. Rather, Wisconsin law only requires that insurers notify policyholders of the availability of such coverage. *See* Wis. Stat. § 632.32(4m) (1997–98). Once an insured opts for UIM coverage, § 632.32(4m) sets the minimum amount of coverage at $50,000.

Danbeck intended to pursue a UIM claim and that American Family would be given credit for the full $50,000 limit of Horne's liability policy.[2]

¶ 5.   American Family refused to pay Danbeck's claim. The company took the position that UIM coverage was not available under its policy because Danbeck had settled for less than Horne's liability limit and therefore had not "exhausted" that limit within the meaning of the policy language. Danbeck sued.

¶ 6.   American Family moved for summary judgment. The Circuit Court for Dane County, Paul B. Higginbotham, Judge, denied the motion on several grounds. First, the circuit court applied *Teigen v. Jelco of Wisconsin, Inc.*, 124 Wis. 2d 1, 367 N.W.2d 806 (1985), which interpreted an exhaustion clause in a primary/excess insurance situation to allow exhaustion by settlement of less than policy limits. Further, the circuit court found the exhaustion clause to be ambiguous and therefore construed it in favor of coverage. *See Vidmar v. Am. Family Mut. Ins. Co.*, 104 Wis. 2d 360, 365, 312 N.W.2d 129 (1981). The court also noted that allowing coverage under these circumstances would promote the purposes of UIM insurance, including compensating the victims of an underinsured motorist's negligence, and concluded that American

---

[2] This type of settlement is similar to what is typically known as a *Loy* agreement. In *Loy v. Bunderson*, 107 Wis. 2d 400, 320 N.W.2d 175 (1982), this court approved the use of such agreements, in which a primary insurer is allowed to settle for less than its policy limits and then is released from liability, while the excess insurer remains liable. *Loy* approved the agreements in the context of primary/excess insurance in order to promote partial settlements. We affirmed the use of these types of agreements in *Teigen v. Jelco of Wisconsin, Inc.*, 124 Wis. 2d 1, 367 N.W.2d 806 (1985).

Family's interpretation of the policy language violated public policy.

¶ 7. Accordingly, the circuit court interpreted the exhaustion clause to allow recovery of UIM benefits when the UIM policyholder settles his or her claim with the tortfeasor's insurer and credits the UIM carrier for the difference between the settlement amount and the tortfeasor's liability limits. The court then ordered mediation, and the parties agreed that Danbeck was entitled to $20,000.

¶ 8. American Family appealed the denial of summary judgment, and the court of appeals reversed. The court focused on the policy language and concluded that the exhaustion clause unambiguously required the insured to exhaust the underinsured motorist's limits of liability by payment of full policy limits—in this case, $50,000. The court held that the partial settlement and credit endorsed by the circuit court did not satisfy the policy's requirements for coverage. *Danbeck v. Am. Family Mut. Ins. Co.*, 2000 WI App 26, ¶¶ 7–9, 15, 232 Wis. 2d 417, 605 N.W.2d 925 (Ct. App. 1999).

## II

¶ 9. This is an appeal from the denial of a motion for summary judgment, which we review de novo, applying the same methodology as the circuit court. *Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶ 22, 233 Wis. 2d 314, 607 N.W.2d 276. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2) (1997–98).

¶ 10.   The interpretation of an insurance contract is a question of law subject to de novo review. *Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212, 341 N.W.2d 689 (1984). An insurance policy is construed to give effect to the intent of the parties, expressed in the language of the policy itself, which we interpret as a reasonable person in the position of the insured would understand it. *Garriguenc v. Love*, 67 Wis. 2d 130, 134–35, 226 N.W.2d 414 (1975). The words of an insurance policy are given their common and ordinary meaning. *Henderson v. State Farm Mut. Auto. Ins. Co.*, 59 Wis. 2d 451, 457–59, 208 N.W.2d 423 (1973). Where the language of the policy is plain and unambiguous, we enforce it as written, without resort to rules of construction or principles in case law. *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 637, 586 N.W.2d 863 (1998). This is to avoid rewriting the contract by construction and imposing contract obligations that the parties did not undertake. *Gonzalez v. City of Franklin*, 137 Wis. 2d 109, 122, 403 N.W.2d 747 (1987). Contract language is considered ambiguous if it is susceptible to more than one reasonable interpretation. *Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 230–31, 564 N.W.2d 728 (1997). If the language is ambiguous, it is construed in favor of coverage. *Garriguenc*, 67 Wis. 2d at 135. In interpreting an insurance policy, the court may also consider the purpose and subject matter of the insurance. *Employers Health Ins. v. Gen. Cas. Co. of Wis.*, 161 Wis. 2d 937, 946, 469 N.W.2d 172 (1991).

### III

¶ 11.   The narrow issue in this case is whether a UIM insurer's obligation to pay UIM benefits to its

insured is triggered when the insured settles with the tortfeasor's liability insurer for less than full liability limits and then credits the UIM carrier for the difference. The determination of this issue turns on language in the insurance policy that requires payment of UIM benefits only "after the limits of liability under any bodily injury liability bonds or policies *have been exhausted by payment of judgements or settlements.*"

¶ 12.　The parties dispute whether the language of the exhaustion clause is ambiguous. American Family says the language unambiguously requires full payment of the tortfeasor's liability policy limits as a prerequisite to payment of UIM benefits. Danbeck argues that the exhaustion clause is ambiguous because a reasonable insured might understand it to mean that a settlement that barred further claims and gave credit for full payment of liability limits would effectively "exhaust" those limits.

¶ 13.　We agree with American Family and the court of appeals that while the "settlement plus credit" approach to exhaustion has the same practical effect as payment of full policy limits, it is not consistent with the plain language of the policy, which unambiguously requires exhaustion "*by payment of judgements or settlements,*" not "settlement plus credit."[3]

---

[3] Our conclusion that the language of the UIM exhaustion clause is unambiguous is consistent with cases from other jurisdictions that have construed nearly identical language, either in the context of a UIM policy, a UIM statute, or both. *See Robinette v. Am. Liberty Ins. Co.*, 720 F. Supp. 577, 580 (S.D. Miss. 1989); *Birchfield v. Nationwide Ins.*, 875 S.W.2d 502, 503 (Ark. 1994); *Farmers Ins. Exch. v. Hurley*, 90 Cal. Rptr. 2d 697, 701 (Cal. Ct. App. 1999); *Cont'l Ins. Co. v. Cebe-Habersky*, 571

¶ 14.    The exhaustion clause in the insurance policy sets forth these requirements for UIM coverage: the *limits* of the tortfeasor's bodily injury *liability policy* must be *exhausted* by *payment of judgments or settlements*. The phrase "limits of liability" clearly refers to the total amount of liability coverage available under the tortfeasor's bodily injury liability insurance policy. In this case, Horne carried $50,000 of liability insurance.

¶ 15.    The term "exhaust" is also plain and unambiguous and has a readily ascertainable common and ordinary meaning. The dictionary defines "exhaust" as: "to use up or consume completely; expend the whole of. . . ." *Random House Unabridged Dictionary* 678 (2d ed. 1993). Accordingly, to "exhaust" the tortfeasor's liability policy limits, the full $50,000 must be expended in total or used up completely.

¶ 16.    Finally, the exhaustion clause specifies that only one manner of exhaustion will trigger the obligation to pay UIM benefits: exhaustion "by payment of judgements or settlements." Danbeck argues that the term "payment" can be understood in more than one way: payment of full policy limits, or payment of less than full policy limits plus a credit in favor of the UIM carrier for the difference.

¶ 17.    However, a "settlement plus credit" does not constitute "payment" of liability limits as that term is commonly and ordinarily understood. It is true that a settlement of this nature bars further claim against the tortfeasor's insurer and protects the UIM carrier against liability for the difference between the settlement amount and the tortfeasor's full policy limits. But

A.2d 104, 106 (Conn. 1990); *Lewis v. State Farm Mut. Auto. Ins. Co.*, 857 S.W.2d 465, 466–67 (Mo. Ct. App. 1993); *Fed. Ins. Co. v. Watnick*, 607 N.E.2d 771, 774 (N.Y. Ct. App. 1992).

it plainly does not exhaust the tortfeasor's policy limits *by payment* of those limits, as required by the UIM policy.

¶ 18.   A "payment" is "**1.** something that is paid; an amount paid; compensation; recompense. **2.** the act of paying. . . ." *Random House Unabridged Dictionary* 1424 (2d ed. 1993). The court of appeals concluded that, in the context of this UIM exhaustion clause, the term "payment" is susceptible of only one reasonable meaning: "compensation paid by the liability insurer and received by the insured." *Danbeck*, 2000 WI App 26, ¶ 9. We agree. And here, the liability insurer, Country, paid only $48,000 which did not exhaust Horne's $50,000 liability limits by payment of those limits.

■■

¶ 19.   Danbeck's argument that the exhaustion clause is ambiguous arises primarily out of his reading of *Teigen*. We reject this argument for two reasons. First, it turns our traditional ambiguity analysis on its head. As we have noted, the fundamental principles of contract interpretation do not permit resort to case law to create ambiguity where the contract language is clear on its face. Second, *Teigen* is inapplicable because it did not concern the interpretation of an exhaustion clause in a UIM policy.

¶ 20.   *Teigen* arose in the context of a primary/excess insurance dispute. The exhaustion clause at issue in the case established the outer limits of the primary insurer's duty to defend. Specifically, the policy clause in question stated that the insurer was not obligated "to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements." *Teigen*, 124 Wis. 2d at 8. This court held that the primary insurer's duty to defend was fully discharged—"exhausted" within the

meaning of this clause—by a settlement for less than full policy limits, plus the execution of a *Loy* [*Loy v. Bunderson*, 107 Wis. 2d 400, 320 N.W.2d 175 (1982)] release. *Teigen*, 124 Wis. 2d at 8–9. Notably, the opinion did not address whether the policy language was ambiguous. Instead, the decision in *Teigen* was based primarily on general public policy considerations supporting partial settlements. *Id.* at 7–8, 12.

¶ 21.   It is unquestionably true that partial settlements, and *Loy*–type agreements effectuating them, serve the interests of the parties and promote judicial economy and therefore have been approved by the courts. In *Teigen* we noted that:

> The desirability of *Loy*–type agreements lies in the encouragement of partial settlements in future cases, thereby fostering effective and expeditious resolution of lawsuits. Partial settlements not only benefit the parties involved, but the justice system as a whole. Further, we reemphasize that "public interest requires that a plaintiff be permitted to settle claims against some of the exposed parties without releasing others." [*Loy*, 107 Wis. 2d] at 425, 320 N.W.2d 175. *Accord, Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963), and *Swanigan v. State Farm Ins. Co.*, 99 Wis. 2d 179, 299 N.W.2d 234 (1980).

*Teigen*, 124 Wis. 2d at 7–8. However, this public policy, as important as it is, cannot supersede unambiguous policy language or impose obligations under the contract which otherwise do not exist. The generalized public policy favoring settlements is insufficient to jus-

tify voiding or refusing to enforce the clear language of the policy in this case.[4]

¶ 22.  As this contract is written, UIM benefits are owed only when the tortfeasor's liability insurance is insufficient to cover the UIM policyholder's damages. According to the plain language of the policy, that insufficiency does not arise unless and until the full limits of the tortfeasor's policy are paid out. In other words, the tortfeasor "motorist" is not "underinsured" as a definitional matter until his or her policy limits are fully—not partially—paid. Thus, although the public policy supporting partial settlements still figures prominently in our jurisprudence, it does not supplant the plain language of the insurance contract. To choose an interpretation that furthers the public policy of encouraging settlements but contradicts the clear language of the contract would be to substitute our policy preferences regarding UIM insurance for the agreement of the parties.[5]

---

[4] The dissent is concerned that "an insured may unknowingly be the subject of agreements between the UIM and liability carriers" in that "the UIM insurer may offer to underwrite a portion of the settlement costs in order to avoid a larger payout under the UIM endorsement," and refers to another case heard this term in which this fact pattern occurred. Dissent at ¶ 37. However, in *Danner v. Auto Owners Insurance*, 2001 WI 90, 245 Wis. 2d 49, 629 N.W.2d 159, also issued today, we hold, among other things, that such collusive conduct on the part of a UIM carrier, undertaken to defeat a UIM insured's otherwise available UIM coverage, may give rise to a bad faith claim under *Anderson v. Continental Insurance Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978).

[5] The dissent argues that the exhaustion clause in this case is inherently ambiguous because we have interpreted it differently than the exhaustion clause in *Teigen*. But as we have noted, the policies and the exhaustion clauses in each case are

¶ 23. Danbeck also argues pursuant to *Ranes v. American Family Mutual Insurance Co.*, 212 Wis. 2d 626, 634, 569 N.W.2d 359 (Ct. App. 1997), that it is the public policy of this state to provide insurance coverage "as long as the insured's failure to perform under the terms of the insurance contract has not resulted in prejudice to the insurer." *Ranes* concerned a notice of settlement provision in a UIM policy and the consequences of an insured's failure to give notice to the UIM carrier of a settlement with the tortfeasor. *Id.* at 630–31. The insurance policy in *Ranes* did not specifically address the issue of the insurer's duty to pay UIM benefits where the insured has failed to give notice of settlement. In the absence of specific contract language, the court of appeals looked to public policy to resolve the question. *Id.* at 630–34.

¶ 24. By contrast, the insurance policy in this case contains explicit, unambiguous language specifying that the UIM carrier's duty to pay does not arise until exhaustion within the meaning of the policy has occurred. Therefore, and once again, we are not at lib-

---

actually quite different, despite the similarity in language. *Teigen* concerned an exhaustion clause in a primary insurance policy that specified when the insurer's duty to defend its insured was satisfied and at an end. This case, in contrast, concerns an exhaustion clause in a UIM policy (in a sense, an excess policy, as the dissent notes) that specifies when the UIM insurer's duty to pay is triggered, or, stated differently, when the tortfeasor motorist is "underinsured" according to the terms of the policy. This distinction makes *Teigen* inapplicable; it does not create ambiguity in this contract. If *Teigen* had concerned the interpretation of language in the excess carrier's policy that specified when excess coverage was triggered, it might well be applicable here. But it did not.

erty to rewrite the insurance contract to achieve the public policy invoked in *Ranes*.

¶ 25.   In summary, we conclude that the unambiguous language of the exhaustion clause in the UIM policy in this case requires the insured to exhaust the tortfeasor's liability limits by payment of full policy limits in order to trigger the duty to pay UIM benefits. Accordingly, because Danbeck's settlement with Horne's insurer was not for full policy limits, he is not eligible for UIM benefits under his policy with American Family.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 26.   ANN WALSH BRADLEY, J. *(dissenting)*. Can reasonable minds differ? This is the tried and true test for determining ambiguity. In the case at hand, the majority examines the exhaustion clause at issue and concludes that the phrase "exhausted by payment of judgments or settlements" is susceptible to only one reasonable interpretation and is therefore unambiguous. Such a conclusion is essential to the majority's holding.

¶ 27.   Yet, sixteen years ago this court examined that exact language—word for word—and interpreted the phrase to mean the opposite of what the majority espouses today. *Teigen v. Jelco of Wisconsin, Inc.*, 124 Wis. 2d 1, 8, 367 N.W.2d 806 (1985). Apparently, reasonable minds can differ. Undoubtedly, the language at issue is ambiguous.

¶ 28.   Nevertheless, the majority persists in its conclusion. Its decision begins and ends with the policy language, concluding that the exhaustion clause unambiguously requires full payment of the at-fault driver's

liability limits in order to trigger the UIM insurer's obligations. The majority concludes that a settlement plus credit cannot constitute a "payment" under the exhaustion clause.

¶ 29. I would instead acknowledge that the language is ambiguous and apply the principles of insurance policy construction which require it to be construed against the insurer. Additionally, I would acknowledge both our case law and public policy require a construction of the exhaustion clause that allows an insured to "settle and credit."

¶ 30. This court's interpretation of the same language in *Teigen* belies the majority's contention that the language of the exhaustion clause is unambiguous. In *Teigen*, the court examined a third-party liability policy that terminated the insurer's duty to defend when the insurer's liability was "exhausted by payment of judgments or settlements." *Id.* at 8. A majority of this court, emphasizing the word "settlements," concluded that under that policy language liability was exhausted by virtue of a settlement and *Loy* release.

¶ 31. Today the majority, emphasizing the word "payment" in the same phrase, concludes that there may be no exhaustion under the same language where an insured settles and credits under a *Loy*–type agreement. The majority now reads the language to unambiguously require payment of the full policy limits for there to be exhaustion. The ambiguity inherent in these conflicting interpretations does not implicate the question of whether *Teigen* was correctly or incorrectly decided or whether it is distinguishable. The simple fact of the *Teigen* majority's contrary interpretation is a testament to the ambiguity.

¶ 32. We do not need more than the ambiguity inherent in these competing interpretations to resolve

this case. This case should be simply a matter of applying the rule that the ambiguous language should be construed against the insurer and in favor of coverage. *Maas v. Ziegler*, 172 Wis. 2d 70, 79, 492 N.W.2d 621 (1992). However, in addition to the application of this rule of policy construction, a decision allowing for exhaustion where an insured enters a settle and credit agreement is required under our precedent and as a matter of public policy. While the majority's determination that the language is unambiguous implicitly entails the conclusion that the *Teigen* majority's reading is unreasonable, I conclude that the *Teigen* majority's reading is not only reasonable, but it is correct and is binding precedent.

¶ 33.   As the majority notes, the settle and credit arrangement entered into by Danbeck and the at-fault driver's liability insurer is similar to a *Loy* agreement. Majority op. at n.2. Under *Loy v. Bunderson*, 107 Wis. 2d 400, 320 N.W.2d 175 (1982), a primary insurer may settle with an insured for less than the policy limits in exchange for being released from liability without affecting the excess insurer's liability. As in *Teigen*, the question in this case is whether there is exhaustion under such an agreement where the policy requires "exhaustion by payment of judgments or settlements." Try as it might to distinguish *Teigen*, the distinctions the majority draws are distinctions without a difference.

¶ 34.   The majority asserts that "*Teigen* is inapplicable because it did not concern the interpretation of an exhaustion clause in a UIM policy." Majority op. at ¶ 19. We are not told, however, why the question should be answered differently in the UIM context than in the context of a primary/excess insurance dis-

pute. What is UIM but excess insurance to the at-fault driver's liability insurance?

¶ 35. Moreover, the *Teigen* court itself dismissed the distinction the majority attempts to draw. The court rejected the excess insurer's attempt to distinguish *Loy* on the ground that the insurance relationship was different than that found in *Loy*. The court explained that the controlling factor is not the nature of the insurance relationship, but is the public policy in encouraging settlement:

> If the issue of the existence of a true primary/excess insurance situation had been fundamental to our reasoning behind the *Loy* principle, then our holding in *Loy* would not control in the present suit. However, that is not the case. The rationale behind our affirmance of the "Loy Release/Covenant Not To Sue" is not anchored to the issue of whether a true primary/excess insurance situation exists. The desirability of *Loy*–type agreements lies in the encouragement of partial settlements in future cases, thereby fostering effective and expeditious resolution of lawsuits.

*Teigen*, 124 Wis. 2d at 7. Under the proper application of this precedent, the court would acknowledge that the validity of a *Loy*–type agreement is not anchored to the type of policy at issue, but is a consequence of the public policy that we seek to foster.

¶ 36. Unfortunately, by invoking the supposed lack of ambiguity to avoid consideration of the policy of encouraging settlement, the majority not only fails to promote that policy, but indeed frustrates it. The loss of all potential UIM recovery is a strong disincentive to settlement. In cases where an injured party is represented by counsel, who after today's decision will be expected to know the harsh consequences of such a

settlement, we should have no reason to anticipate settlement where there is the potential for UIM recovery.

¶ 37. The most unfortunate aspect of the majority opinion is the harsh result unwitting Wisconsin insureds will bear. While we can expect to see settlement deterred where an injured party is represented by counsel, those individuals without the advice of counsel will most certainly be unaware of today's decision. These injured parties may unwarily agree to settle and credit at the expense of any potential UIM recovery. Additionally, such an insured may unknowingly be the subject of agreements between the UIM and liability carriers. To facilitate settlement, the UIM insurer may offer to underwrite a portion of the settlement costs in order to avoid a larger payout under the UIM endorsement. The suggestion of such agreements has been brought before the court this very term.

¶ 38. As a result of today's decision, we can now add the UIM exhaustion clause to the growing list of inequitable UIM endorsement provisions that persist under the current state of UIM. In my dissent in *Taylor v. Greatway Insurance Co.*, 2001 WI 93, 245 Wis. 2d 134, 628 N.W.2d 916 (Bradley, J. dissenting), I explained the ways in which the definition of underinsured motor vehicle and the reducing clause defeat the reasonable expectations of Wisconsin insureds and the purpose of UIM coverage. Dan Danbeck is one of the few insureds to reach this court whose prospects of recovery under a UIM endorsement have escaped those pitfalls. However, by invoking the mantra of unambiguous policy language the majority once again defeats an insured's prospects of recovery under a UIM endorsement.

¶ 39. I would conclude that not only is the exhaustion clause ambiguous and subject to construc-

tion against the insurer but also that our precedent and public policy require a construction under which a settle and credit agreement is deemed to exhaust the at-fault driver's liability limits. Accordingly, I respectfully dissent.

¶ 40.    I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.