Lisa J. Brown, Estate of Damon L. Brown, Jr., and Damon L. Brown, Sr., Plaintiffs,

Waukesha County Department of Health & Social Services, Subrogated-Plaintiff,

v.

MR Group, LLC, Michael Fohl, Herrell Grading Inc., a/k/a Herrell Trucking, Inc., and General Casualty Company of Wisconsin, Defendants,

Ralph W. Raush, Individually and d/b/a West Avenue Real Estate, LLC, formerly d/b/a MR Group, LLC, a/k/a RWR Storage, and d/b/a All One Storage, formerly d/b/a Lake & Country Storage of Muskego, formerly d/b/a U-Lock Up Self Storage, Defendant-Appellant,

Acuity, A Mutual Insurance Company, Intervenor,

West Bend Mutual Insurance Company, Defendant-Respondent.

Court of Appeals

*No. 03–2309. Submitted on briefs December 15, 2004.—Decided January 26, 2005.*

2005 WI App 24

(Also reported in 693 N.W.2d 138.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Brian M. Brejcha* and *Kathryn Sawyer Gutenkunst* of *Cramer, Multhauf & Hammes, LLP* of Waukesha.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Christine M. Genthner* of *Jeffrey Leavell, S.C.* of Racine.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. This is the first case that construes how comprehensive general liability policies should be interpreted as they apply to Wisconsin limited liability companies with respect to "Named Insured" language. We hold that when a clause in a standard CGL policy refers to a "manager" or "member" of a limited liability company, the signators to the insurance policy intend for those words to mean the same as they are defined pursuant to Wisconsin's limited liability company statute, WIS. STAT. § 183.0102 (2003–04),[1] and are not defined according to the common usage found in a recognized dictionary. However, with respect to the term "real estate manager" in a CGL policy, when the term does not have "limited liability company" as its antecedent, the parties mean to use the most universal definition, and thus, we use a recognized dictionary to define it. Here, the plaintiff claimed that Ralph W. Raush was a de facto manager of MR Group, LLC. We hold that West Bend Mutual Insurance Com-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

pany owes no coverage and no duty to defend Raush because there is no claim that he is either a manager or member of an LLC as those words are defined in our statutes or that he was acting as a real estate manager. We affirm the circuit court's dismissal of West Bend from this case.

¶ 2. On March 2, 2002, Damon L. Brown, Jr., a minor child, fell into a water-filled excavation site located on property in the city of Waukesha. The child drowned. His parents and his estate, administered by his mother, commenced a suit. The complaint named several defendants, including, among others: (1) MR Group, LLC, the owner of the real estate; (2) West Bend, MR Group's liability insurance carrier; (3) Michael Fohl, in both his individual capacity and as manager of MR Group; and (4) Ralph Raush, the appellant in this case, both in his individual capacity and doing business as several other named entities. The complaint alleged that Raush was a de facto manager of MR Group who financed the purchase of the excavation site and was involved in decision making related to the commercial development of the site with the intention that he would acquire the property for use by his own existing business after the completion of construction.

¶ 3. Raush cross-claimed against the other three defendants for contribution or indemnification if he should incur liability to the plaintiffs. West Bend successfully moved for summary judgment on the ground that it had no duty to defend or indemnify Raush. Raush appeals.

¶ 4. We review summary judgment motions independently, employing the same well-known methodology as the circuit court. *See Doyle v. Engelke*, 219 Wis. 2d 277, 283, 580 N.W.2d 245 (1998). We grant summary

judgment when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *See id.*

¶ 5. An insurer has a duty to defend a suit whenever the complaint alleges facts that, if proven to be true, would lead to the insurer's liability pursuant to an insurance policy. *Id.* at 284–85. In determining whether such a duty exists, we compare the factual allegations within the four corners of the complaint to the terms of the policy. *Id.* at 284. We construe the former liberally, drawing all reasonable inferences and resolving all doubts about the duty to defend in the insured's favor. *See id.*; *Elliott v. Donahue*, 169 Wis. 2d 310, 321, 485 N.W.2d 403 (1992).

¶ 6. Our examination of the insurance policy requires our interpretation of its terms, a task that calls for our independent review. *Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. Our construction aims to give effect to the intent of the parties to the agreement as they express it in the language of the policy, interpreting such language as a reasonable person *in the position of the insured* would understand it. *Id.* We give the words in the policy their common and ordinary meanings and may resort to recognized dictionaries to establish those meanings. *See id.*, ¶ 15; *Muehlenbein v. West Bend Mut. Ins. Co.*, 175 Wis. 2d 259, 265, 499 N.W.2d 233 (Ct. App. 1993). Where the language is plain and unambiguous, we go no further and enforce the terms as written. *Danbeck*, 245 Wis. 2d 186, ¶ 10.

¶ 7. We will begin with the language in MR Group's insurance agreement with West Bend. We first

note the declarations page of the agreement, which states that the insured is a limited liability company. The other pertinent parts of the policy read as follows:

## SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

 **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .

 . . . .

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

 . . . .

 **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

 . . . .

**2.** Each of the following is also an insured:

 . . . .

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

Thus, the policy makes clear that, as respects a limited liability company, it covers the named insured, its managers (with respect to their management duties) and members (with respect to the conduct of the named insured's business). The policy also covers real estate managers of the named insured. In order to be covered, Raush must qualify as a manager, a member, or a real estate manager of MR Group.

¶ 8. The policy contains no definition of any of these terms, but we conclude that their meanings are unambiguous. WISCONSIN STAT. ch. 183, entitled, "LIMITED LIABILITY COMPANIES," clearly defines both "manager" and "member" with respect to such companies. " 'Manager' . . . means, with respect to a limited liability company that has set forth in its articles of organization that it is to be managed by one or more managers, the person or persons designated in accordance with s. 183.0401." WIS. STAT. § 183.0102(13). Section 183.0102(15) defines a "member" as "a person who has been admitted to membership in a limited liability company as provided in s. 183.0801 and who has not dissociated from the limited liability company."

¶ 9. Raush protests that it is inappropriate to consider statutory definitions of "manager" and "member" and urges us to rely on dictionary definitions for the terms' common meanings. We decline to do so. Although a dictionary definition ordinarily helps to ascertain the common and ordinary meaning of a term, *Danbeck* reveals that the real test is what a reasonable insured would understand the term to mean. *See Danbeck*, 245 Wis. 2d 186, ¶ 10.

768

¶ 10. We conclude that a reasonable insured that is a limited liability company would understand "manager" and "member" to mean "manager" and "member" as the terms are used with respect to limited liability companies. The relevant provision of the policy providing coverage for managers and members applies exclusively to *limited liability companies*. It does not deal with other sorts of business establishments commonly thought to have "managers" or "members." In addition, we must keep in mind that limited liability companies are statutory creatures. We expect that a reasonable insured would be familiar with statutory definitions of major players in its organizational structure and that references to such players would commonly be thought to allude to those particular definitions.

¶ 11. Significantly, the West Bend policy went into effect in February of 2002. WISCONSIN STAT. ch. 183 and the statutory definitions in WIS. STAT. § 183.0102 became effective in 1993. Thus, these definitions have been operative since the relatively recent creation of limited liability companies. If any common and ordinary meaning of "manager" or "member" exists with respect to limited liability companies, it would be these statutory definitions that are as old as the oldest such company in Wisconsin.

¶ 12. Unlike "member" or "manager," no definition of "real estate manager" appears in WIS. STAT. ch. 183. We also note that the provision guaranteeing insurance coverage for "real estate managers" does not appear as part of the policy that references only limited liability companies. Thus, a definition generally applicable to several types of insureds is most likely what the parties intended.

769

¶ 13. Accordingly, we consult a dictionary to arrive at the common and ordinary meaning of the term. "Real estate" is defined as "property in buildings and land." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 973 (10th ed. 1997). "Manager" is defined, in pertinent part, as "one that manages: as **a :** a person who conducts business or household affairs **b :** a person whose work or profession is management." *Id.* at 706. From these definitions, we conclude that a "real estate manager" is one who manages the business affairs of certain real estate.

¶ 14. Not only does the complaint not allege that Raush qualifies as a "manager," a "member," or a "real estate manager" for MR Group, the factual allegations, even if true, do not suffice to show that Raush falls into any of these categories. The complaint states that Raush was a "de facto manager," that he financed the purchase of the property and planned to benefit from the construction thereon by acquiring the property later, and that he was "intimately and mutually involved with all decision-making" related to commercial development of the site, in conjunction with MR Group and Fohl, such that he was engaged in a joint venture or common plan and scheme with them. It also contains numerous allegations that like MR Group and Fohl, Raush knew or should have known about the dangerous conditions on the property and yet took no affirmative steps to rectify them.

¶ 15. Read most liberally, the complaint establishes that (1) Raush may be a liable codefendant; (2) he had a vested interest in MR Group's property; and (3) MR Group, Fohl, and Raush had extensive business dealings with respect to all phases of the property's

development plans. None of these facts indicate that MR Group *designated* Raush as a manager in accordance with Wis. Stat. § 183.0401. This section makes clear that designation occurs either in the limited liability company's operating agreement or by a vote of the members. *See* § 183.0401(2). We do not see how such designation can be "de facto"—Raush is either named a manager in the operating agreement or he is not; either the members voted to make him a manager or they did not. Thus, whatever "de facto manager" means, one simply cannot *reasonably* infer that it comports with the statutory definition of "manager." *See* Wis. Stat. § 183.0102(13); *Elliott*, 169 Wis. 2d at 321–22; *Doyle*, 219 Wis. 2d at 284 (we draw all reasonable inferences in the nonmoving party's favor). Indeed, the complaint specifically names only *Fohl* as MR Group's manager.

■■■■

¶ 16. Based on the complaint, Raush is also not a "member" or "real estate manager" as contemplated in the policy. The factual allegations do not show that MR Group has admitted Raush to membership in accordance with Wis. Stat. § 183.0801. *See* Wis. Stat. § 183.0102(15). Hence, he is not a "member." He is not a "real estate manager" because nothing in the complaint establishes that Raush was in the business of managing *real estate* affairs vis-à–vis the subject property. Deciding what sort of business activity to place on a piece of undeveloped real estate and being "mutually and intimately involved" with implementing such a plan is simply not within the realm of real estate management.

¶ 17. Raush attempts to create an issue of material fact by citing the circuit court's confusion over the definition of the term "de facto manager." He argues

that because the circuit court admitted it did not know what the term meant, a genuine issue existed as to whether "de facto manager" came within the definition of "manager." Along the same lines, he contends that it was premature for the court to determine that West Bend had no duty to indemnify Raush. He first quotes language from the transcript of the summary judgment hearing in which the court recognizes that Raush may be liable to the plaintiffs. He then quotes the circuit court:

> What de facto manager means in terms of the overall picture and the liability and the joint and several liability is . . . definitely an issue that the Court can't decide on this basis, but at this point I find that we have made the decision that there is no coverage and other issues involving this policy and this claim will be litigated down the road.

Raush further quotes the following exchange wherein West Bend's attorney attempted to clarify the scope of the court's ruling:

> Counsel: Your honor, just for consideration, you indicated specifically no duty to defend and used the term no coverage. Does that mean no duty to indemnify also?

> The Court: Yeah, it does at this point; right.

He appears to argue that the circuit court should not have reached the issue of whether West Bend had a duty to indemnify when later facts could establish such a duty.

■

¶ 18. We reject Raush's argument. First, because we review summary judgment motions de novo, *see Doyle,* 219 Wis. 2d at 283, it does not matter what the

circuit court decided. We have independently concluded that summary judgment was appropriate. Moreover, all the circuit court meant by the language Raush cites was that, based on the four corners of the complaint, there was no apparent duty to indemnify. Certainly, facts not included in a complaint sometimes emerge at trial, but the courts cannot consider on summary judgment facts not of record and not known to be in existence. We will not speculate about whether new facts will later reveal that West Bend has a duty to indemnify Raush. Raush may raise the issue if and when such facts materialize.

¶ 19. We hold that the four corners of the complaint do not allege facts that indicate West Bend may be liable to indemnify Raush. The complaint does not indicate whether Raush falls into any of the various categories of insureds named in the West Bend insurance policy. Hence, West Bend has no duty to defend the plaintiffs' suit against Raush. For that reason, we affirm the circuit court's grant of summary judgment for West Bend.

*By the Court.*—Judgment affirmed.